$$\frac{210}{216} \quad \frac{435}{534}$$

# King's Estate.

*Wills—Codicils—Construction—Trusts and Trustees—Accumulations of income.*

Testator in his will created a spendthrift trust for a son for life. At the death of the son the principal of the trust estate was devised to the children of the son. The trustee was directed to pay to the son out of the annual income an amount not to exceed $5,000 and it was directed that any income in excess of this annual payment should be invested for the benefit and increase of the share held in trust. On the same day that the will was executed, the testator by a codicil revoked the devise in trust for the son and directed his executors to pay to the wife and children of the son the sum of not less than $1,500 nor more than $5,000 per year, "said payments to continue during the lifetime of my son and his wife, and either of them, and that upon the death of both of them the said one third interest in my estate to go to their children, as provided in my said will. And I declare that I hereby revoke any devises directly or in trust for my said son Alexander contained in my said above will." The wife subsequently died leaving to survive her the husband and five children. The income was in excess of the sum of $5,000 per year. *Held,* (1) that notwithstanding the codicil and the substitution therein of other payees than testator's son a valid trust existed for the son's share for life even if he survived his wife; (2) that the accumulations being largely in excess of the allowance fixed in the will should be distributed to the children of the son.

Argued Oct. 31, 1904. Appeal, No. 191, Oct. T., 1904, by the Colonial Trust Co., guardian of Charles H. King, from decree of O. C. Allegheny Co., April T., 1904, No. 16, dismissing exceptions to adjudication in the estate of R. H. King, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of HAWKINS, P. J., as follows :

The questions raised in this case are whether or not (1) an active or dry trust was created by the fifth clause of Mr. King's will; and (2) accumulations are distributable.

The facts are these :

Mr. King died August 24, 1895, leaving a will, in which, after certain bequests and devises, he proceeds :

" 5th. Subject also to said devise and bequest, I give, devise

and bequeath to my said daughter, Martha King (now Kepler), the remaining third part or portion of all my estate, real, personal or mixed, to her and her heirs and assigns forever; in trust, nevertheless, to hold the same for my son Alexander during the term of his said natural lifetime. The interest or income of said property, real or personal, to be paid to him directly, and not to be subject to his debts or liabilities or any judgment or decree of any court liable for any costs thereon, and after the decease of my son Alexander King, to grant, convey and assign the said property and principal to the children of my said son Alexander, or in case of the death of his said children before their father, then to the heirs of said deceased child or children.

" And in further trust that the said trustee shall pay out of said annual income to each of my said sons, not exceeding the annual sum of five thousand dollars, which is to be paid to them monthly or quarterly, as she may decide, and that any sums in excess of said annual payment she will invest the said excess of income of the said shares held so in trust for the benefit and increase of the respective shares so held in trust for the reversion thereof."

On the same day, attested by the same witnesses, this codicil was executed;

" I, Robert H. King, the above testator, do make, publish and declare this codicil to my above will, and do hereby revoke any and all devises and bequests therein made to my son, Alexander King, and I hereby direct my executors to pay to the wife and children of my said son Alexander the sum of not less than fifteen hundred dollars per year, with the privilege to allow them not more than five thousand dollars per annum, the payments to be made in quarterly payments. Said payments to continue during the lifetime of my son and his wife, and either of them and that upon the death of both of them the said one third interest in my estate to go to their children, as provided in my said will. And I declare that I hereby revoke any devises directly or in trust for my said son Alexander contained in my said above will."

Mr. and Mrs. King had five children when testator died, of whom one was over and four under twenty-one years, but all are now of age except Charles. The trust was accepted and

$ 5,000 paid to Mrs. King annually until she died, October 25, 1901 since which time it has been paid to her eldest daughter Mrs. Jones, who, by mutual understanding, was authorized to manage the same.

Mr. King and the children continued to live together until, about January, 1903, Mr. King and his son Melford withdrew, and are occupying rooms elsewhere.

The income of this share is largely in excess of the $5,000 directed to be paid Mrs. King.

The solution of the question in this case depends upon whether or not the purpose which testator had in view has been accomplished. It is very plain that his original purpose in the creation of the trust was to protect his son Alexander against his own improvidence during natural life; and that if the original will had stood, there would be a valid subsisting trust to-day, Alexander being still living. The test of its validity lies in a lawful purpose legally declared: Krebs's Estate, 184 Pa. 222. This much is conceded. It is equally plain that notwithstanding the substitution made by the codicil to other payees than testator's son Alexander, the interposition of a trust remains. There are neither express words nor necessary implication of revocation of the trust; the real purpose in making the codicil was not revocation of the trust but substitution of new payees. If there was any doubt to the continuance of the trust created by the original will, it must be resolved by the direction to pay and the discretionary powers vested in trustees by the codicil as to the amount to be paid, which of themselves imply the exercise of active duties, and, therefore, a valid trust; for to have the means of payment of interest or income there must be investment and collection, and discretionary power must have a subject; Krebs's Estate, supra. It was practically conceded that the trust did continue during Mrs. King's life; but did testator intend that it should continue longer? It certainly was his original purpose that it should continue during his son Alexander's life; for he says so; and if, as already suggested, the codicillary purpose was simply to make a new payee, the trust remained, for there is no rule of construction better settled than that the effect of a codicil shall be limited to its purpose. And besides, the codicil itself bears on its face express evidence of intended trust.

Trustees are specifically directed to pay in their discretion to the wife and children of testator's son Alexander, $1,500 to $5,000 per annum, "said payments to continue during the lifetime of my son and his wife, and either of them." The duration of the trust was thus to be measured by the life of the survivor, and Alexander survives. The payments of "interest or income" were to continue during the life "of either of them." If the trust was valid during Mrs. King's—it must continue during Mr. King's life.

It was urged, however, that because testator's son Alexander has no beneficial interest in the estate, there was no occasion for the continuance of the trust. The answer to this is, that the testator has expressly declared the performance of active duties by the trustee shall "continue" during his son's life. Even assuming that he has no beneficial interest, there is no reason why his life should not be made a measure of duration of the trust. There is just as much reason for sustaining a trust pur autre vie as an estate pur autre vie. But is it true that Alexander has no beneficial interest in the estate? There is no apparent reason why he should have been disinherited. Testator's affection for him is unmistakably manifested by making him in the original will sole beneficiary, and guarding his enjoyment of it by the interposition of a spendthrift trust. Why the testator on the same day should have stricken out his name and substituted his wife and children is not explained. Probably some new evidence of improvidence occurred which suggested further protection, and he therefore made his son's wife dispenser of his bounty. Certainly he cannot be supposed to have had in his contemplation his son's exclusion from the enjoyment of his bounty in common with his wife and children— that he should live in poverty and they in luxury, in the same house; nor would exclusion be consistent with wifely impulse or duty. The revocation of any devise "directly" made testator's son, implies indirect benefit intended, and the limitation of duration of the trust by the son's life is explicable upon no other theory of construction than that he should enjoy this bounty in common with his wife and children. His name is associated with the beneficial enjoyment from beginning to end in such manner as to leave no doubt of his interest. Living together in the same family, it is incredible testator intended

any discrimination against his son in this enjoyment, and even if there had been such intention, it would have been impossible of execution without a tendency to severance of the family relation. The father's belief in his son's disposition to improvidence would naturally make him more solicitous to provide for his declining years.

It is obvious, from what has been said, that the conduct of the beneficiaries can have no effect on the duration of the trust itself. The mandate of continuance during the son's life is so absolute and so positive as to put it beyond the power of anyone to end. Children may marry, one after another, or father and child may, in disregard of parental or filial duty, leave home, and no right of participation in the trust estate possibly be thereby lost or suspended: Paisley's App., 70 Pa. 153; Bowden v. Laing, 14 Simons, 113. It is not proper to speculate in this case as to what would take place in the event of complete breaking up of the home, for the fact that two members of the family voluntarily left could not have that effect.

There is no apparent reason why the allowance should not be paid Mrs. Jones as heretofore.

The accumulations in this case are so largely in excess of the allowance fixed in the will, and the contingent fund proper to judicious management of the trust, that they fall within the prohibition of the statute. In view of the character of this estate $10,000 would for the present provide an ample contingent fund. And as the balance of the accumulations was intended for the benefit of the children, distribution should be made to them.

There is nothing on the face of this will to justify the additional suggestion made at the argument of the exceptions that the primary purpose in the creation of the trust was accumulation. The natural and obvious purpose was the protection of the testator's son and his family from his improvidence, and the provision for accumulation was simply incidental. But even concede that accumulation was part of the scheme, it does not follow that that relating to the maintenance of the family must fail. It is the policy of the law to carry out the testamentary intention so far as it is possible: Forney's Estate, 161 Pa. 209; and the validity of the trust to this extent is clear and should therefore be carried out.

*Error assigned* among others was the decree of distribution.

*James R. Sterrett* of *Patterson, Sterrett & Acheson*, for appellants, cited: Odgen's App., 70 Pa. 501; Sharps's Estate, 155 Pa. 289; Gray on Perpetuities, secs. 119, 120.

*Ernest E. Jones*, for appellee, cited: Little v. Wilcox, 119 Pa. 439; Rife v. Geyer, 59 Pa. 393; Dodson v. Ball, 60 Pa. 492; Krebs's Estate, 184 Pa. 222; Forney's Estate, 161 Pa. 209; Hemphill's Estate, 180 Pa. 95.

PER CURIAM, December 31, 1904:

This judgment is affirmed on the opinion of the learned judge below.