# Roney's Estate.

*Wills—Accumulations—Act of April* 18, 1853, *P. L.* 503.

1. The Act of April 18, 1853, P. L. 503, permits of accumulations only during an existing minority, and for the benefit of the minor. To be lawful, the accumulated fund must be that of the minor, and must be paid to him upon arriving at the age of twenty-one. All other accumulations are void; and where there has been such direction, or where income accumulates because not disposed of, it goes to the one who would be entitled if no accumulation had occurred.

*Wills—Vested and contingent interest—Accumulations—Illegal accumulations—Act of April* 18, 1853, *P. L.* 503—*Laches.*

2. Testator after having made various gifts and devises, including annuities to certain brothers and sisters named, directed as follows: "And upon the decease of my said brothers and sisters and payment of all sums as hereinbefore directed to be paid—I will and direct any residue of principal or income of my estate shall be divided and paid one-half part to my son-in-law W. he surviving, and the other half part thereof, or in the event of the said W. being then deceased, the whole of said residue to and among the then surviving children of my brother J., and my sisters [naming them], and the issue of any deceased child then living, their respective executors and administrators, share and share alike, such issue taking, however, only their parent's share." *Held*, (1) that the resulting accumulation of income was illegal; (2) that the gift to the residuary legatees was contingent; and (3) that the illegal accumulation of income should be distributed to the next of kin.

3. Where an executor's account is confirmed and distribution decreed to trustees, without any reference to a question of unlawful accumulations of income, such question is not to be considered res adjudicata by the decree; nor will a son of the next of kin entitled to the illegal accumulations be barred by laches after thirty-two years, because his mother raised no question as to the accumulation at the audit of the executor's account, and because he did not after her death raise the question himself by petition to the court, it appearing that the trustees filed no accounts for years, and even then gave no notice to the son of the next of kin.

Argued Jan. 4, 1910. Appeals, Nos. 199, 200, 201, 202, 203, 204, 225, 226 and 227, Jan. T., 1909, by William R. Dougherty et al., from decree of O. C. Phila. Co., Oct. T., 1882, No. 291, dismissing exceptions to adjudication in Estate of Samuel J.

Roney, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. Before LAMORELLE, J.

*Errors assigned* were in dismissing exceptions to adjudication.

*John Houston Merrill*, with him *Edward G. McCollin* and *J. Washington Logue*, for appellants.

*Theodore F. Jenkins* and *Horace Haverstick*, for appellee.

OPINION BY MR. JUSTICE POTTER, February 14, 1910:

We agree with the conclusion of the orphans' court that the excess of income in this case was allowed to accumulate in violation of sec. 9 of the Act of April 18, 1853, P. L. 503. The statute permits of accumulations only during an existing minority, and for the benefit of the minor. To be lawful, the accumulated fund must be that of the minor, and must be paid to him upon arriving at the age of twenty-one. All other accumulations are void: Wright's Est., ante, p. 69; Washington's Est., 75 Pa. 102. And where there has been such direction, or where income accumulates because not disposed of, it goes to the one who would be entitled if no accumulation had occurred.

The testator here devised the residue of his estate to the executor, in trust, to pay annuities to named brothers and sisters, during their respective lives, and certain pecuniary legacies upon the death of the respective annuitants. He further directs: "And upon the decease of my said brothers and sisters and payment of all sums as hereinbefore directed to be paid—I will and direct any residue of principal or income of my estate shall be divided and paid one-half part to my son-in-law, William G. Perry, he surviving and the other half part thereof, or in the event of the said William G. Perry being then deceased, the whole of said residue to and among the then surviving children of my brother, John Roney, and

my sisters, Mary Eckel, Mary R. Dougherty, Anna Jane Foust and Elizabeth A. Smith, and the issue of any deceased child then living, their respective executors and administrators, share and share alike, such issue taking, however, only their parent's share."

It will be noted that it is only upon the decease of the brothers and sisters that the residue is to be paid to the "then surviving children," etc. The gifts to the residuary legatees are contingent upon their being alive at the date of the death of the last survivor of testator's brothers and sisters. Until the happening of that event, it could not be known who would be entitled to take. The interests of the residuary legatees are clearly contingent. By the residuary clause, one-half of the residue was to be paid to testator's son-in-law, William G. Perry, "he surviving." But he did not survive. He died before the last of the annuitants, and therefore took no share in the residue. No one suggests that his interest was vested. Yet the language by which the gift was made to him is substantially the same in meaning as that used to designate the other residuary legatees. "He surviving," and "then deceased" are used in the same sense as "the then surviving children" and "the issue . . . . then living." The interests of appellants in one-half of the residue were contingent upon their surviving Perry, as well as all the annuitants. We are not able to distinguish the language of the will here in question from that construed in Mulliken v. Earnshaw, 209 Pa. 226, where Mr. Chief Justice MITCHELL said (p. 230): "In the present case there is no room for doubt as to the actual intent of the testator. His words are, after a devise to his widow for life, 'and from and immediately after her death or marriage, I give and devise my said real estate unto my children then living, and the issue of any that may be deceased, in equal parts and shares absolutely and in fee simple, the issue of any deceased child to take only the deceased parent's share.' All these remainders are clearly contingent. No child takes a vested interest because until the happening of the contingency prescribed, the death of the widow, it cannot appear that he will be in the class to whom the devise is made, to wit, those

then living, and if he should die before then leaving issue such issue would claim directly in their own right under the terms of the will. That this was the time actually meant by the testator is so clear on the face of the will that it would not admit of contradiction by the presumption of a different intent under any rule of construction."

The ruling of the court below, that the estates given by the final paragraph of the residuary clause of the will, were contingent and not vested, is justified by the decision in Adams's Est., 208 Pa. 500. There as set forth in the syllabus, testator gave a portion of his estate to trustees in trust for a son G. for life, "and after his death remainder to go and be equally divided among all the children of my said son G. then living, and the issue of any of them then dead, yet so, however, that the issue of any such deceased child shall take if but one solely, and if more than one then equally among them such part and share only as his or their deceased parent would have taken if living. But if my said son shall die leaving no child or children, nor issue of any such him surviving, then the part or share of my residuary estate that under the above devise would have gone to his descendants, shall go and be equally divided between my daughter M. and my son T." Held, that the period of vesting was fixed as of the death of G., the life tenant, and that no estate vested in a granddaughter of G. who died before the grandfather.

To the same effect is the reasoning, and the result reached thereby, in Wood v. Schoen, 216 Pa. 425. And the same rule was expressly followed, and the words "then living" held to indicate an intention to give a contingent remainder in the case of McDaniel v. McDaniel, 219 Pa. 371.

In the case at bar, at the time fixed for distribution, there were persons in being, answering to the description in the will, so no question arose as to the distribution of the principal; the controversy here is as to the proper disposition of the accumulated income.

Authority is not lacking to guide us in deciding the question involved. In Grim's App., 109 Pa. 391, where the direction to accumulate was held void, the fund was not awarded to the

residuary legatees, because they were not entitled to take presently, but only after the death or marriage of the widow. The accumulations were accordingly awarded to the widow and heirs or next of kin. So in Martin's Est., 185 Pa. 51, it was said, "The act of assembly prohibiting accumulation, except during an existing minority and for the benefit of the minor, provides that the liberated income shall go, not under the intestate laws, but to 'such person or persons as would have been entitled thereto if such accumulation had not been directed.' The inquiry, therefore, must, in the first instance, always be, who, under the provisions of the will, as fairly interpreted, such persons are. It frequently happens, however, that there are none; as where the principal of the estate from which the income in the meantime is to be accumulated is not given until a future event; or where the persons who are to take cannot now be known with certainty, as in Rhodes' Est., 147 Pa. 227; Mellon's Est., 16 Phila. 323; or where the accumulation is to create a fund from which legacies are payable and there is no present residuary gift, as in Grim's App., 109 Pa. 391. In these and similar cases, the liberated income necessarily passes under the intestate laws." See also Edwards's Est., 190 Pa. 177. In accordance with the principles above set forth, the court below properly awarded the accumulations to the heirs and next of kin of the testator.

Counsel for appellant in their argument have brought to our notice some English cases, which they urge tend to support an exception to the application of the general rule as to unlawful accumulations. But the decisions in Harbin v. Masterman, L. R. (1894), 2 Ch. 184, and Wharton v. Masterman, L. R. (1895), Appeal Cases, 186, as appears from the opinions in those cases, are based expressly upon the fact that by the terms of the will under construction the residuary legatees took a vested estate in both the principal and the surplus income of the trust estate, and that no one else had the least interest in or claim upon such income. And counsel for appellants, in their argument here, admit squarely that these English cases do not apply here unless the will in the present case gives to the residuary legatees vested rights. That it does

not do so we have already pointed out. Under the English act, it has been held that where income of residue is directed to be accumulated for a period beyond that allowed by the act, the effect of the statute is that the income, during the period for which accumulation is unlawful, goes to the next of kin as undisposed of. See Weatherall v. Thornburgh, L. R. 8 Ch. D. 261. In a later case, In re Travis; Frost v. Greatorex, L. R. (1900), 2 Ch. 541, the rule of Weatherall v. Thornburgh was followed, and it was held that where there is an annuity given by will, and the surplus income directed to be accumulated until the death of the annuitants, the accumulations accruing after the expiration of twenty-one years, go under the intestate law, and not to the residuary legatee. It was also held that Weatherall v. Thornburgh is not inconsistent with and is not overruled by Wharton v. Masterman. In the case of Talbot v. Jevers, L. R. 20 Eq. 255, a testator directed the payment of several annuities out of his residuary estate, and upon the death of the last surviving annuitant directed that both principal and accumulations of income should be applied for the benefit of testator's nephew and his heirs. It was held that, as to the income accruing after the expiration of twenty-one years from the death of testator, there was an intestacy. This case bears a close resemblance in its facts, and the provisions of the will construed, to the case at bar. It is cited, and followed, together with Weatherall v. Thornburgh, L. R. 8 Ch. D. 261, by Judge PENROSE, in Mitcheson's Est., 11 W. N. C. 547.

It is further suggested by counsel for appellants that the right to the accumulations was settled by the confirmation of the executor's account, filed in 1875. But it does not appear that any question as to unlawful accumulations was then raised or passed upon, and this question cannot therefore fairly be said to be res adjudicata. Nor do we see any merit in the suggestion that the doctrine of laches should be applied as against the grandson of the testator. This contention was well disposed of by the auditing judge, who refused to apply the doctrine of laches, and said: "Laches implies failure to act upon full knowledge of all the facts. The present claimant, a

grandchild of testator, is entitled to the surplus income arising from and after February 4, 1892, the date of his mother's death. He was not heretofore bound, so far as the facts appear, to petition the court to construe the will; the very fact that the trustee did not notify him of the audit would seem to be conclusive that it considered he had no claim or rights in the premises, and his knowledge of a surplus would necessarily come from the trustee, which was in exclusive control of the residuary estate. The trustee filed no accounts from time to time, as certain of the annuitants died. It was not compelled to do so. Now it files its first account, and it seems to the auditing judge exceedingly technical to hold the next of kin bound by what his mother failed to do in May, 1875, at which time the executor's account was confirmed nisi; especially so, assuming the old practice to be similar to the present, in view of the fact that unless there was then an accumulation shown to be such in the account as filed, the court would have refused either to consider or to determine the question, for the very simple reason that there was then no evidence of a fund for immediate distribution."

The court below reached the conclusion that the surplus income accumulated during the forbidden period, passed, under the intestate laws, to the daughter of the testator, his sole next of kin. And that by reason of the length of time which has elapsed since her death, payment of her debts, and the settlement of her estate is to be presumed, so that distribution may properly be made to the person claiming through her. We think this disposition of the fund entirely correct.

The appeal is dismissed, and the decree of the orphans' court is affirmed.