# Neel's Estate.

*Wills — Real estate — Conversion — Vested and contingent remainders—Accumulations—Act of April 18, 1853, P. L. 503, Sec. 9—Intestacy.*

1. Where a will authorizes and empowers trustees to make sale of the real estate at any time they may see fit, and directs that the proceeds thereof shall be held upon the same trusts and for the same purposes as the personal estate, and provides for the distribution of the estate in the form of money upon the death of the life tenant, and further gives the trustees authority for that purpose to sell any real estate then unsold, with the provision that all the estate shall be converted into money and that it shall be so distributed, there is such a blending of realty and personalty as to show that testatrix intended to create a common fund from both, and to bequeath such fund in the form of money as to work a conversion of the real estate.

2. If there is a present right to a future possession though that right might be defeated by some future event, contingent or certain, there is nevertheless a vested estate.

3. Where a testatrix bequeathed her estate in trust for the benefit of her daughter for life, with directions to the trustees to apply so much of either principal or income as they might think proper for the maintenance and support of the life tenant, and further provided "I do hereby will and bequeath that my property and estate that shall be in charge of said trustees at the time of the decease of the said Adella (the life tenant) to and among the children of the said Adella, provided that the said Adella shall leave at her decease any such children, and in case that the said

Adella shall not leave at her decease any such child or child of such deceased child, then in that case I will, devise and bequeath all my property and estate so in charge of my said trustees......at the death of Adella to and among my brothers and sisters, share and share alike, the children of any now or then deceased brother or sister to represent his or her parent and take the share he or she would take if living," the brothers and sisters of testatrix living at her death, and the children of deceased brothers and sisters took vested interests in the fund, subject to be divested by the death of the life tenant leaving children.

4. Accumulation is forbidden by the Act of April 18, 1853, P. L. 503, Section 9, no less where it results by indirection than where it is expressly ordered. If the result of carrying into effect the provisions of the will has produced accumulations beyond the period and not within the conditions provided by the act such accumulations are void.

5. Where in such case, it appeared that the original fund passing into the hands of the trustees and constituting the corpus of the estate, had been increased during the lifetime of the life tenant by the receipt of income in excess of her needs and of the expenses of administering the estate, such excess constituted unlawful accumulations in violation of the Act of April 18, 1853, P. L. 503, Section 9, and upon the death of the life tenant were distributable under the intestate laws.

Argued Oct. 5, 1915. Appeals, Nos. 141, 142, 143, 144, and 145, Oct. T., 1915, by Florence E. White and Harry K. Gregory, Executors of Joseph R. White, deceased; Mary J. Harbison, Laura E. Linton, Mary Taylor, Executrix of Lucinda Taylor, deceased; and Mary E. McCandless, from decree of O. C. Lawrence Co., Sept. T., 1914, No. 34, dismissing exceptions to report of auditor, in Estate of Nancy Neel, deceased. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to report of Wylie McCaslin, Esq., Auditor.

From the record it appeared that the auditor stated the following findings of fact and conclusions of law: "(1)—Nancy Neel died March 16, 1872, testate; by her last will, after certain specific devises to her brother

Isaiah White, she provided as follows: 'I do will, devise and bequeath to my brother Isaiah White, and my brother-in-law John Taylor......all my property and estate, real, personal, and mixed, except what is hereinbefore devised to my brother Isaiah, the same to be held by them and the survivor of them, as trustees, for and upon the following trusts.    (Here follows full authority to manage and control the devised property and to sell real estate, the proceeds to be held "on the same trusts," "during the life of" testatrix's daughter Adella.)    And the said trustees and the survivor of them shall apply during the life of my daughter Adella, so much of either income or principal in their charge as in their best discretion they may think proper to and for the maintenance and support of my said daughter Adella.    And I charge and direct the said trustees,......that they provide liberally and well for her maintenance and support. And her the said Adella's receipts for whatever moneys they or the survivor of them may see fit to give her to be expended by herself for her maintenance shall be sufficient vouchers for the same........I do hereby will and bequeath all my property and estate that shall be in the charge of said trustees, or the survivor of them, at the time of the decease of the said Adella to and among the children of the said Adella, including the children of any deceased child who shall represent his or her parent and take the share his or her deceased parent would take if living, provided that the said Adella shall leave at her decease any such children or children of such deceased children.    And in case that the said Adella shall not leave at her decease any such child or child of such deceased child, then and in that case, I will, devise and bequeath all my property and estate so in charge of my said trustees or the survivor of them at the death of Adella to and among my brothers and sisters, share and share alike, the children of any now or then deceased brother or sister to represent his or her parent and take the share he or she would take if living.    And for the pur-

pose of distributing the estate to and among whichever class shall happen then to be entitled, I do authorize and empower my said trustees Isaiah White and John Taylor, and the survivor of them, to sell any real estate then, at the death of the said Adella, remaining unsold, at private or public sale and to make deed therefor to the purchasers thereof, and to convert all my estate into money, and to make distribution thereof as aforesaid.' (2)—Nancy Neel, left to survive her one child, Adella Neel, and brothers and sisters as follows: Isaiah White, Samuel H. White, Mary Pearson, and Lucinda Taylor. (3)—The Executors of the will of Nancy Neel filed a final account of their administration and paid over the balance due the estate to the Trustees named in the will, who continued to administer the said trust until the death of the survivor of them; whereupon Joseph R. White was duly appointed trustee to succeed them, and who has now filed his Sixth Partial account as such Trustee, showing a balance in his hands of $98,675.21, of which the Auditor finds the sum of $50,490.88 to constitute the principal or corpus of the estate originally going into the hands and possession of the Trustee and the remainder $48,-184.33 to constitute the increase upon the said principal derived from rents, interest, etc. (4)—Adella Neel, the daughter of Nancy Neel, the decedent, was from early childhood somewhat deficient in mental capacity...... (5)—Adella Neel died on February 19th, 1912, intestate, unmarried and without issue, aged from sixty-five to sixty-eight years. (6)—Isaiah White, the brother of Nancy Neel, the decedent, died May 6th, 1888, intestate, unmarried and without issue. (7)—Samuel H. White, a brother of Nancy Neel, the decedent, died in 1892, leaving six children, Amzi White, Elizabeth Harbison, Sarah Carson, Joseph R. White, Laura Linton and Mary J. Harbison, of whom the first three named died subsequent to the death of Nancy Neel and prior to the death of Adella Neel, while Joseph R. White has died since the death of Adella Neel. By his last Will and Testament

duly probated Samuel H. White after giving certain specific devises and bequests, provided as follows: 'To my sons, Amzi B. White, Joseph R. White, and my daughters, Mary J. Harbison and Laura E. Linton, and to my grandchildren, Albert W. Harbison, Howard R. Harbison, Laura McCready and Effie Taggart, the children of my daughter, Elizabeth Harbison, deceased, and Wilbur Carson and Nevin Carson, children of my daughter, Sarah Carson, deceased, I devise, give and bequeath all the residue of my estate, real and personal to be divided equally between them as follows; that is, to each of my children above named now living, the one-sixth, and the children of my deceased daughter, Elizabeth Harbison, together the one-sixth, and to the children of my deceased daughter, Sarah Carson, together one-sixth.' He appointed James Linton and Amzi B. White executors. Amzi B. White by his last Will and Testament gave his entire estate, real and personal, to his wife, Mary R. White, and named her as Executrix. He left to survive him in addition to his wife, four children, Norris White, Elmer T. White, Laura Shaffer and Mayme White. Elizabeth Harbison died leaving to survive her, four children, Albert W. Harbison, Howard R. Harbison, Laura C. McCready and Effie Taggart. Sarah Carson died leaving two children, Wilbur Carson and Nevin Carson. (8)—Lucinda Taylor, a sister of Nancy Neel, the decedent, died in the year 1914, testate, and her estate is now represented by Mary Taylor, her Executrix. (9)— Mary Pearson, a sister of Nancy Neel, the decedent, died in 1900, leaving to survive her four children, Joseph K. Pearson, David W. Pearson, Eva Thompson and Emma Boyles, all of whom died prior to the death of Adella Neel, and Mary E. McCandless, who survives. By her last will......Mary Pearson after the giving of certain specific legacies disposed of the residue of her estate, real, personal and mixed, in the following proportions: To her daughter, Emeline Boyles, 9-40, to the

children of Joseph K. Pearson, deceased, 9-40, to her son, David W. Pearson, 9-40, to her daughter, Mary E. McCandless, 9-40, to her grandson, David P. Thompson, 4-40. She appointed her son, David W. Pearson, executor. Joseph K. Pearson died prior to his mother's death, but after the death of Nancy Neel, leaving to survive him a widow, Catherine Pearson, and four children, S. D. Pearson, Edward Pearson, Gertrude Pearson Cunningham and Mary Pearson. David W. Pearson died July 22d, 1911, leaving to survive him a widow, Ella Pearson, and one child, Cornelia Bascom. Emma Boyles died about 1904, leaving to survive her two children, David C. Boyles and Mayme Clendenin, also three grandchildren, Gula Foltz and Stewart Foltz, children of Virginia Foltz, a deceased daughter, and also Fredrica Boyles, a daughter of Frederick Boyles, a deceased son. Eva Thompson died about 1884 leaving to survive her a husband......Thompson, and one son, David Thompson, who still survives, and a son, George Thompson, who died about 1893, unmarried and without issue."

CONCLUSIONS OF LAW.

"(1) The will of Nancy Neel worked a conversion of her entire estate into personalty. (2) At the death of Nancy Neel her brothers and sisters and the children of any brothers and sisters then deceased took a vested interest and estate in all of the corpus of such estate which passed into the hands of her trustees. (3) Upon the death of the testatrix, one-fourth of the corpus of her estate became vested in her brother, Isaiah White, and upon his death, intestate, it passed to his next of kin as follows: One-fourth to his niece, Adella Neel, and the remaining three-fourths in equal shares to her brother, Samuel H. White, and her two sisters, Lucinda Taylor and Mary Pearson. (4) At the death of the testatrix, Samuel H. White, Lucinda Taylor and Mary Pearson each became entitled to one-fourth of the corpus of her

estate, and upon the death of each of them (this went) to their children, where any, and otherwise to their personal representatives. (5) The accumulations now in the hands of the trustees of the decedent pass to the administrator of the estate of Adella Neel, who was the only child and therefore the next of kin of Nancy Neel. (6) It appears that the trustees have paid collateral inheritance tax amounting to $4,750.00, being the tax on one hundred thousand dollars, less the discount. In the foregoing calculations this tax paid has been all charged to accumulations. The auditor is of opinion that so much of said sum as would pay the tax upon the corpus should now be charged against that fund and credited to accumulations. The balance of the amount paid will be a credit upon such tax as may properly be found to be chargeable against the accumulations upon the final distribution of that fund."

In accordance with the above findings of fact and conclusions of law, the auditor recommended the following distribution: Balance, $50,083.39, less collateral tax, $2,378.96, leaving balance for distribution of $47,-704.43; divided thus: Richard F. Dana, administrator d. b. n. of Adella Neel, 1-16, Mary Taylor, executrix of Lucinda Taylor, deceased, 5-16, Mary R. White, executrix of Amzi White, deceased, 5-96, estate of Elizabeth Harbison, deceased, 5-96, estate of Sarah Carson, deceased, 5-96, H. K. Gregory and Florence E. White, executor and executrix of Joseph R. White, deceased, 5-96, Laura Linton, 5-96, Mary J. Harbison, 5-96, estate of Joseph K. Pearson, deceased, 1-16, estate of D. W. Pearson, deceased, 1-16, estate of Emma Boyles, deceased, 1-16, Mary E. McCandless, 1-16, estate of Eva Thompson, deceased, 1-16, making a total of 16-16ths or $47,704.43. Accumulations for distribution $48,184.33, plus collateral tax paid out of accumulations $2,378.96; total $50,563.29, less proportion of cost of audit $391.51, leaving balance for distribution on this account of $50,-

171.78, which was awarded to Richard F. Dana, administrator d. b. n. of the estate of Adella Neel, deceased.

The court dismissed the exceptions. Florence E. White and Harry K. Gregory, executor and executrix of Joseph R. White, deceased; Mary J. Harbison, Laura E. Linton, Mary Taylor, executrix of Lucinda Taylor, deceased, and Mary E. McCandless, appealed.

*Errors assigned* were in dismissing the exceptions.

*Oscar L. Jackson,* with him *Charles R. Davis,* for Mary Taylor, executrix of Lucinda Taylor, deceased, and Mary E. McCandless, appellants.

*Harry K. Gregory,* for Florence E. White and Harry K. Gregory, executor and executrix of Joseph R. White, deceased; Mary J. Harbison and Laura E. Linton, appellants.

*Samuel S. Mehard,* with him *S. W. Dana* and *Richard F. Dana,* for Richard F. Dana, administrator d. b. n. of estate of Adella Neel, deceased, appellee.

*Rufus C. McKinley, J. Norman Martin* and *Norman A. Martin* filed a paper book for estates of Joseph K. Pearson, D. W. Pearson, Eva Thompson, Elizabeth Harbison and Sarah Carson, appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, February 21, 1916:

Nancy Neel devised her residuary estate in trust during the life of her only child, a daughter, with directions that the trustees should "apply during the life of my daughter, Adella, so much of either income or principal in their charge as in their best discretion they may think proper to and for the maintenance and support of my said daughter......And her the said Adella's receipts for whatever moneys they......may see fit to give her

to be expended by herself for her maintenance shall be
sufficient vouchers for the same in all accounts of their
management of this trust." The testatrix further pro-
vided as follows: "I do hereby will and bequeath all my
property and estate that shall be in the charge of said
trustees......at the time of the decease of the said
Adella to and among the children of the said Adella
......, provided that the said Adella shall leave at her
decease any such children......And in case that the
said Adella shall not leave at her decease any such child
or child of such deceased child, then and in that case,
I will, devise and bequeath all my property and estate
so in charge of my said trustees......at the death of
Adella to and among my brothers and sisters, share and
share alike, the children of any now or then deceased
brother or sister to represent his or her parent and take
the share he or she would take if living. And for the
purpose of distributing the estate to and among which-
ever class shall happen then to be entitled, I do authorize
and empower my said trustees......, and the survivor
of them, to sell any real estate then, at the death of the
said Adella, remaining unsold, at private or public sale
and to make deed therefor, to the purchasers thereof,
and to convert all my estate into money, and to make
distribution thereof as aforesaid."

The testatrix died, a widow, in 1872; her daughter,
Adella, never married, and she died intestate and with-
out issue in 1912. One brother of the testatrix died in-
testate, unmarried and without issue, in 1888; another
brother died testate, leaving children, in 1892; a sister
of testatrix died testate, leaving children, in 1900; an-
other sister died testate in 1914; all of which is set
forth more at large in the notes of the reporter, pub-
lished in connection herewith, to which we shall refer,
from time to time, during the course of this opinion.
The several questions now before us concern the con-
struction of Nancy Neel's will, and they arise on five
separate appeals taken by various parties in interest

who are dissatisfied with the final distribution of her estate decreed by the Orphans' Court.

The learned auditor appointed by the court below, after finding facts and stating conclusions of law, so ably discusses the material points involved, that, throughout this opinion, we shall quote liberally from his report. In dealing with the subject of the character of the estate for distribution, whether real or personal, the auditor said: "It is to be noted that the will authorizes and empowers the trustees to make sale of the real estate at any time they may see fit, and directs that the proceeds thereof shall be held upon the same trusts and for the same purposes as the personal estate. At the death of her daughter, Adella Neel, she (the testatrix) provides for the distribution of her estate in the form of money, and, for that purpose, again gives to her trustees authority to sell any real estate then unsold, with the further provision that all of her estate shall be converted into money and that it shall be so distributed. The language of the will scarcely constitutes a positive direction to sell the real estate, but, in order that the trustees may execute the will according to its purpose and intent, there would appear to be an absolute necessity to sell any of the real estate remaining unsold at the death of the daughter, Adella Neel, in order to make distribution of the estate in the manner provided under the will. The auditor is of opinion that there is under the provisions of this will such a blending of realty and personalty of the decedent's estate as to show that she intended to create a common fund from both and to bequeath such fund in the form of money; ......it is apparent, therefore, that the provisions of the will worked a conversion of her real estate into personalty, thus breaking the descent and vesting the entire estate as personalty: Dundas's App., 64 Pa. 325; Darlington v. Darlington, 160 Pa. 65." [Also see Ramsey v. Ramsey (No. 1), 226 Pa. 249]. In this we find no error.

The next important question in the case concerns the

bequests to the brothers and sisters of the decedent, and the point is, when did they vest? In relation to this, after reviewing the will of Nancy Neel, and numerous relevant authorities, the auditor concluded that "the bequest to the brothers and sisters of the testatrix, or their children, gave a vested interest immediately upon the death of Nancy Neel......, and the interests of any of the brothers and sisters who died prior to the death of Adella Neel......(and without issue) would pass immediately to their personal representatives." Notwithstanding the able arguments presented by the appellants against this view, on the facts at bar, we are not convinced of error. The interests given to the brothers and sisters of the testatrix were willed to persons in being and ready to take actual possession immediately upon the death of her daughter, Adella, and these bequests were not upon an express precedent condition that the legatees should be alive at the time of the distribution, as in Roney's Est., 227 Pa. 127, 129, and other such cases; but the words of the will are, "I will, devise and bequeath all my property......at the death of Adella to and among my brothers and sisters, share and share alike," and then the testatrix annexes the substitutionary clause, "the children of any now or then deceased brother or sister to represent his or her parent and take the share he or she would take if living." The contingencies provided for, as this will was written, were such as might defeat the estates taken by the several brothers and sisters after they had vested, but, under the relevant authorities, these estates were so vested at the death of the testatrix that, upon the demise of any one of the legatees in the lifetime of Adella, without children him or her surviving, the interest in question would pass to his or her legal representatives; nevertheless, the estates given to the brothers and sisters were always subject to be divested, during the life of Adella, first, by the latter dying leaving children (Packer's Est. (No. 2), 246 Pa. 116), and next by any of the former dying leav-

ing children (Carstensen's Est., 196 Pa. 325, 335; Massey's Est., 235 Pa. 289, 297). The first of these contingencies did not happen, and wherever the second occurred the auditor properly substituted the children, or their personal representatives, instead of their deceased father or mother.

In Safe Deposit and Trust Co. of Pittsburgh v. Wood (No. 1), 201 Pa. 420, 427, the rule is comprehensively stated thus: "The question of vested or contingent is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. Neither does it depend upon the defeasibility or indefeasibility of the right of possession; for many estates are vested without possession, as well as with, which are yet defeasible. If there is a present right to a future possession though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate." Moreover, a legacy will always be regarded as vested rather than as contingent unless the language of the will plainly indicates that the testator had a different intention; and here, when we consider that the brothers and sisters of the testatrix were alive and ready to take at the date of her will, and at the time of her death, and that her daughter, Adella, because of her physical and mental condition, was never likely to marry or have children, it is plain that the testatrix, in all probability, intended to vest an estate in such brothers and sisters. As said by the present Chief Justice in Rosengarten v. Ashton, 228 Pa. 389, at page 396, in distinguishing Carstensen's Est., supra, "the brothers and sisters of the testatrix were in esse at the date of her death, and the time when they were to come into possession of their legacies was fixed by the will, to wit, at the death of Edward Carstensen (here, Adella Neel);...... the bequest was not qualified, but absolute and immediate; there was no condition precedent attached to the gift

which the legatees were required to fulfill prior to receiving the bequest; the time fixed by the testatrix for the enjoyment of the ulterior interests in her estate was not annexed to the legacies themselves and was in no sense a part of the description of the objects of her bounty; and it was evident that the only object of the testatrix in the postponement of the distribution of the estate among her brothers and sisters was a desire that she had to give her husband (here, her daughter) a life interest in it." If it were not for the substitutionary clause above quoted, there could be no question raised but that the interests taken by the brothers and sisters were vested, quodam modo, at the death of the testatrix, subject to be divested should Adella die leaving children her surviving (Packer's Est., supra); and, under the rule in Carstensen's Est., supra, it is clear that the substitutionary clause did not change this condition of affairs, but merely added another contingency, the happening of which might defeat the estate taken by any one of the brothers and sisters. In short, the meaning of the language employed in the bequest under consideration is not that the brothers and sisters must live to the time of distribution in order to take a vested interest, but that the estates given to them respectively shall vest at once upon the death of the testatrix, and that the decease of Adella leaving children her surviving, or the demise of any one of the brothers and sisters, during the lifetime of Adella, leaving children him or her surviving, shall defeat the estates thus vested.

Frasier v. Scranton Gas & Water Co., 249 Pa. 570, cited by some of the appellants, is a case where we construed the language employed in the will as creating a condition precedent that, in order to take, the remainderman had to be alive at the death of the life tenant; therefore, we determined the remainder was contingent. On the facts in that case, as in many others of its kind, so far as concerns its final determination, the result would have been precisely the same whether the limitation

over were construed as a contingent remainder or as one vested, quodam modo, subject to be defeated. The will in the Frasier case and the one at bar are not alike, and the decision there does not control here; the language of the present limitation is much more similar to that employed in Carstensen's will (196 Pa. 325, at p. 326). While, after the several limitations in her will, the present testatrix provides, "and for the purpose of distributing the estate to and among whichever class shall happen then to be entitled I do authorize, etc.," yet, when this language is taken with its context, it is clear that the word "class" is not meant in a technical sense. The testatrix, on the one hand, gave her residuary estate to her lineal descendants, and on the other, in default of such descendants, then to her collateral heirs, and these two sets are what she plainly had in mind when she used the word "class"; by the phrase "shall happen then to be entitled," we take it that the testatrix meant—shall happen to be entitled to the beneficial enjoyment of my estate at the death of Adella, and nothing more. The general subject covered by the branch of the case now before us has been so fully discussed in recent decisions of this court, comprehending practically all the points urged by the present appellants, that it would serve no useful purpose to go further into the matter at the present time; it is sufficient to say that we agree with the conclusions in relation thereto reached by the auditor and affirmed by the court below. See, particularly, Packer's Est., supra, where most of the relevant authorities are reviewed: Tatham's Est., 250 Pa. 269, and Carstensen's Est., supra.

The last branch of the case to be considered, and, perhaps, the most important one, concerns the subject of the accumulations referred to in the third finding of fact (see reporter's notes, supra) ; in this connection, the auditor states: "The original fund passing into the hands of the trustees......and constituting the corpus of the estate has been increased by the receipt of rents and interest in

excess of the needs of the life tenant and the expenses of administering the estate. The questions to be determined are whether such increase, now amounting to more than $48,000.00, constitutes unlawful accumulations in violation of the statute, and whether it is to be distributed as part of the original fund and to the same persons, or otherwise. Counsel for the kindred of Adella Neel on her father's side contend that this increase of the fund constitutes unlawful accumulations and that, as to such amount, Nancy Neel died intestate, and, therefore, the same would pass under the intestate laws to her daughter, Adella Neel; while counsel for the brothers and sisters of Nancy Neel and their issue contend that the entire fund, corpus and increase, should pass (to them) under the terms of the will giving the estate at the death of Adella Neel without children to brothers and sisters of the testator or their children, that this provision operates as a residuary clause and the beneficiaries thereunder should be entitled to take as residuary legatees."

The auditor calls attention to the Act of April 18, 1853, P. L. 503, Section 9, which provides as follows: "No person or persons shall, after the passing of this act, by any deed, will, or otherwise, settle or dispose of any real or personal property, so and in such manner that the rents, issues, interests, or profits thereof, shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settlor or settlors, or testator, and the term of twenty-one years from the death of any such grantor, settlor, or testator; that is to say, only after such decease during the minority or respective minorities, with allowance for the period of gestation, of any person or persons, who, under the uses or trusts of the deed, will, or other assurance directing such accumulation, would, for the time being, if of full age, be entitled to the rents, issues, interests, and profits so directed to accumulate, and in every case where any accumulation shall be directed

otherwise than as aforesaid, such direction shall be null and void, in so far as it shall exceed the limits of this act; and the rents, issues, interests and profits, so directed to be accumulated, contrary to the provisions of this act, shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed."

After stating the above contentions, citing the Act of 1853, supra, and quoting from the will of the testatrix, the auditor, in discussing the branch of the case now under consideration, says: "It is important to note at the beginning that the testatrix did not in positive language direct that the interest and income should be accumulated and capitalized......; she did, however, dispose of her real and personal property in such a manner that the rents and interests thereof have 'partially accumulated.' The daughter for whose benefit for life the trust was created, was more than twenty-one years of age at the time her mother's will went into effect. ......In this respect, therefore, any disposition of her property by the will of testatrix in such manner as to accumulate the rents and interests could not come within the provisions of the above statute authorizing accumulations after the decease of the testator during the minority of any person who would for the time being, if of full age, be entitled to such rents and interest. Notwithstanding the fact that there is no direct and positive language to accumulate and capitalize the income, the auditor is of the opinion that the statute applies whenever the result of the directions in the will is to produce accumulations and capitalization thereof under conditions which do not comply with the provisions of the statute, although in such case there may have been no conscious intention on the part of the testator to direct unlawful accumulations. As was said in White's Est., 8 Pa. D. R. 33, 35, by PENROSE, Judge, 'Accumulation is forbidden by the act no less where it results by indirection than where it is expressly ordered.' The same lan-

guage is quoted with approval by the lower court in
Weinmann's Est., 223 Pa. 508, 510, and approved by the
Supreme Court on appeal......If the result of carrying
into effect the provisions of the will has produced accu-
mulations beyond the period and not within the con-
ditions provided by the act, then such accumulations are
void......It is true, that in several instances the courts
have refused to terminate the trust and to order a dis-
tribution of the accumulations prior to the death of the
person for whose benefit the trust was created, but the
auditor is unable to find any authority for the decision
that accumulations may thus be made lawful.   The
courts have permitted accumulations to be kept intact
on the theory that they may be necessary to provide for
future contingencies, but these rulings have not effected
the disposition of such accumulations upon the termi-
nation of the trust.   In the case now in hand......it is
ably contended by counsel for the brothers and sisters of
the testatrix and their issue that the purpose and inten-
tion of the testatrix was that her entire estate remaining
after the death of her daughter, should pass to and be-
come vested in her own blood relations.   There is suffi-
cient in the will to justify this conclusion.   If this con-
tention be true then it was the intent of testatrix, as ex-
pressed by her will, that the corpus of the estate, together
with any accumulations which might possibly be in the
hands of the trustees, at the death of Adella Neel, should
go to her brothers and sisters or their issue.   If, however,
this was her intent, then such intent would be unlawful
so far as it concerns any accumulations now in the hands
of her trustees under the act above mentioned, since
these accumulations were not to be made during the
minority of any person, nor during the minority of a per-
son who would 'for the time being if of full age be en-
titled unto the rents, issues, interests and profits so di-
rected to accumulate.'   If, therefore, the indirect result
of the provisions of the will of testatrix has brought
about accumulations and these accumulations were not

in favor of either class of persons mentioned in the act
they could not be considered lawful, and would, there-
fore, fall. If, on the other hand, there was no intent to
accumulate beyond the limits prescribed by the act, then
it cannot be assumed that the testatrix intended that
such excess as now appears to exist should pass under
the provisions of her will. If she did not have in con-
templation that there might be any such excess, or in-
crease, then it cannot be successfully contended that she
disposed of such increase by her will. If, therefore, the
testatrix did not have an intention of creating any ac-
cumulation, or increase, of her estate in the hands of her
trustee she could have no intent to provide for the devo-
lution of the whole fund, principal and income, to her
brothers and sisters and their issue; if this be the fact,
then she must be held to have died intestate as to the '
accumulated income now in the hands of her trustees
and such sum would pass as if Nancy Neel had died in-
testate."

The auditor thus concludes that on either line of rea-
soning, i. e., a breach of the act or an intestacy, the estate
of Adella Neel was entitled to the accumulations, and,
in support of his conclusions, he cites and discusses
Washington's Est., 75 Pa. 102 (in connection with
which, see what is said in Wright's Est., 227 Pa. 69, at
page 74); McKee's App., 96 Pa. 277; Edwards's Est.,
190 Pa. 177; Roney's Est., 227 Pa. 127; Walter's Est.,
223 Pa. 598, and Howell's Est., 180 Pa. 515; after which
he considers a contention which is strenuously urged by
certain of the present appellants, i. e., that, if the fund
in question represents unlawful accumulations in breach
of the act, the money should pass to the brothers and
sisters of the testatrix, or their issue, as residuary
legatees, and not to the heirs of Adella Neel. In negativ-
ing this view of the case, the auditor said that, under the
decisions already cited, he could not sustain the above
stated contention, for, according to the terms of the will,
the brothers and sisters, or their issue, were not entitled

to actual possession of any part of the estate until after the death of Adella Neel, and the residuary estate itself was the subject of the provision that, in effect, directed the accumulations; citing in support of this what was said by Judge PENROSE in White's Est., supra, to the effect that, if the unlawful accumulations relate to a vested interest, taking effect in immediate possession the released income goes at once to the beneficiary, but, if to an interest not vested in immediate possession, the income goes to the residuary legatee or devisee, "unless the residuary estate itself be the subject of the provision, in which case the income goes under the intestate laws to the next of kin or heirs" (see also Grim's App., 109 Pa. 391, 397; Rhodes' Est., 147 Pa. 227, 231; Roney's Est., supra, 131; Wright's Est., supra, 74; Sternbergh's Est., 250 Pa. 167, 171). The auditor then goes on to say: "To concede that the accumulations provided for in this case were unlawful and yet distribute them to the persons for whose benefit they were (in effect) directed, would only be to accomplish by an indirect method that which is forbidden by the statute—in violation of the spirit thereof—and it would be within the prohibition of the statute both as to time and as to parties, as it does not appear that any of these collateral kindred were minors at the time of the death of Nancy Neel, nor that they were the persons entitled to the rents, issues and profits if the direction to accumulate had not been made, they not being entitled to receive anything in possession until after the death of Adella Neel."

We concur in the auditor's views as just quoted, and we agree with him that none of the cases relied upon by the appellants controls the point now under consideration. Eberly's App., 110 Pa. 95, decided only that the accumulations in that case did not exceed a reasonable contingent fund, and, for that reason, no distribution should be ordered; and this is true of McIntosh's Est., 158 Pa. 528, 537. Hibb's Est., 143 Pa. 217, simply determined that the amount then in the hands of the trus-

tee should be temporarily held in the interest of judicious management; and, therefore, the trust was continued and no distribution made. King's Est., 210 Pa. 435, really determines only the question whether or not the accumulations were then distributable, and how much thereof should be held as a contingent fund. McKee's App., 96 Pa. 277, is a case where the accumulations were awarded to one who was entitled as an heir at law, the lower court saying (p. 279) that it was immaterial whether he took under the intestate law or because of the statute against accumulations; we affirmed without ruling just how he took. In Weinmann's Est., 223 Pa. 508, the unlawful accumulations were properly awarded to the residuary legatee, for the direction to accumulate was independent of and not contained in the residuary clause of the will, and the accumulations fell into the residuary estate just as they would have done had the will not so provided. Also in Wright's Est., 227 Pa. 69, 74, 75, there was a separate "present residuary gift" which carried with it "everything which had not been otherwise disposed of in a valid way," and in Howell's Est., 180 Pa. 515, 516, the accumulations were awarded to the legatee named in a separate residuary clause of the will. Walter's Est., 223 Pa. 598, where Barger's App., 100 Pa. 239, was relied upon by the appellant, as it is by some of the present appellants, more nearly approaches the case in hand than any other called to our attention, and the distinction sought to be drawn between that case and the present one, that there the gift was an absolute bequest of all the income to the testator's son, while here the daughter of the testatrix is given no such absolute right, is not tenable. The right of the son in Walter's Est. and of Adella Neel under the will at bar, for all purposes apropos to the decision of this case, practically accord; both had interests in the nature of equitable tenants for life; in each instance the trustees who held the legal estate were vested with discretionary power over the expenditure of the income; and in each instance

the accumulations were awarded to the personal representative of the only person who in life enjoyed such income. The award in neither instance, however, was because the person in question had been entitled to the beneficial enjoyment of the income during life, but owing to the fact that he or she was the sole heir at law of the testator or testatrix, it being especially stated in Walter's Est., 223 Pa. 598, 600, "the testator must be taken to have died intestate with respect to the accumulations which the auditor distributed." Therefore, the contention of appellants that the income in Walter's Estate "having been given to him (the one who enjoyed such income during life), it (the accumulations) must pass to his administrator," has no force; for that was not the reason of the decision, as already indicated, the decree in that case resting upon exactly the opposite ground, i. e., an intestacy. It is to be noted that the testamentary provision in Walter's Estate was an express spendthrift trust, which is also true of Carson's App., 99 Pa. 325; and this is sufficient to dispose of the appellants' contentions wherein the present case is treated as being in the nature of a spendthrift trust. Finally, we feel that the cases relied upon by the court below fully sustain the auditor's conclusions that, "Whether the testatrix in this case intended the income should be capitalized and made a part of her general estate passing to her brothers and sisters and their children, or whether there was no such intent and yet the results of the directions of her will have produced such accumulations, in neither case would the conditions of the Act of 1853 be complied with, and the provision of the will which undertakes to dispose of them would fall, further, there being no residuary gift which is not itself affected by the direction to accumulate, the fund must pass to the next of kin under the intestate laws;" that is to say, to Adella Neel, who was the next of kin living at the time of the testatrix's death (Gorgas' Est., 248 Pa. 343), and, she being

deceased at the date of the adjudication, the award was properly made to her personal representative.

We have not attempted to review every case cited to us, since to do so would unduly extend this already too lengthy opinion; but we have read all of them, and have referred to or discussed those which impressed us as most relevant. Although in the five appeals up for review, 102 alleged errors are assigned, yet we do not find a single specification setting forth in totidem verbis the table of distribution confirmed by the court below, and the assignments generally are not in proper form (Prenatt v. Messenger Printing Company, 241 Pa. 267; Scull's Est., 249 Pa. 57, 58-9). We have considered, however, the important points in the case, and are not convinced of material error in any particular.

The assignments are all dismissed, and the decree is affirmed; the costs to be paid by the respective appellants in each instance.