## Olson Estate

*Martin J. Vigderman* and *Freedman, Landy & Lorry,* for accountant.

*Hugh P. Connolly,* for Commonwealth.

SHOYER, J., October 13, 1961.—John J. Olson died September 26, 1957, intestate, survived by a widow, and leaving, as appears from the statement of proposed distribution, as the persons entitled to his estate under the intestate laws, his widow, Marie Olson, and five children, viz.: John J. Olson, Dennis M. Olson, Gregory F. Olson, Bernadette M. Olson and Donna M. Olson. All of the aforementioned children are stated to be minors, of whom John J. Olson, the oldest, was born July 5, 1946, and is now past 15 years of age, and Donna is the youngest, having been born July 24, 1957, and is now past four years of age. By decree of this court, Shoyer, J., bearing Orphans' Court No. 1012 of 1960, and dated April 1, 1960, the Broad Street Trust Company was appointed guardian of the estates of the aforementioned minors.

Letters of administration were granted to the accountant, decedent's widow, on October 9, 1957, and

proof of publication of the grant of same is hereto annexed.

Hugh P. Connolly, Esq., appeared for the Commonwealth, claiming such transfer inheritance tax as may be due and assessed.

In her account the widow-administratrix has debited herself with cash on hand, $17, wearing apparel, $50, total $67. There is also the following notation of an item carried short: "(Cash, net recovery, Marie Olson, Administratrix of the Estate of John J. Olson, deceased vs. Sinnohon Kisen, K.K., U. S. District Court, E. D. of Pa., Civil Action No. 23328) recovered on behalf of widow and five dependent children of deceased, not an asset of estate, $141,017.51."

It is the contention of her counsel that the administratrix received this fund as trustee for the parties entitled under the so-called Wrongful Death Acts of April 15, 1851, P. L. 669, sec. 19, 16 PS §1601, and April 26, 1855, P. L. 309, sec. 1, as amended by the Acts of June 7, 1911, P. L. 678, sec. 1; April 1, 1937, P. L. 196, sec. 1, 12 PS §1602.

Hugh P. Connolly, Esq., Special Assistant Attorney General of the Commonwealth, strongly resists the requested court approval of this short entry and insists that the fund is properly an asset of the estate recovered by the widow as administratrix pursuant to the authority vested in her by section 18 of the aforesaid Act of April 15, 1851, as subsequently amended by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 35(a), 20 PS §771; Fiduciaries Act of April 18, 1949 P.L. 512, secs. 601, 602, 20 PS §§320.601, 602.

The issue here presented was first brought to the attention of the court through a petition filed by decedent's widow praying for a decree of distribution of the net proceeds of the aforementioned district court action. Consideration of that petition was deferred in order that it might be considered simultaneously with

the audit of the account of the decedent's personal representative.

Counsel for the administratrix introduced the testimony of the widow and of Abraham Freedman, Esq., senior partner of the law firm which obtained the compromise settlement after suit brought.

Both counsel have presented clear, comprehensive and exhaustive briefs and have vigorously argued their respective positions before the auditing judge.

The history of the case up to this point is as follows: John Olson, a longshoreman, was seriously injured on September 15, 1957, while unloading a merchant vessel owned by Shinnihon Kisen, K.K. He started suit in the United States District Court for the Eastern District of Pennsylvania on September 23, 1957, and died on September 26, 1957, survived by his widow and five minor children. The widow, Marie Olson, obtained letters of administration on her husband's estate from the Register of Wills of Philadelphia, entering nominal security. The administratrix was then substituted as plaintiff in the personal injury action, previously instituted by her late husband. The aforementioned suit was settled during pretrial conferences for the sum of $215,000. The settlement was finally approved by order of Judge Clary on April 29, 1960. Fees, costs and a claim in subrogation, totaling $73,982.49, were also approved by Judge Clary, leaving a balance of $141,017.51. This balance was ordered to be paid as detailed below. A copy of Judge Clary's order was filed with the register of wills in accordance with section 3 of the Act of July 28, 1953, P. L. 659, 20 PS §1153. The administratrix has filed her account in this court and, apparently following De Calles' Estate, 35 D. & C. 593 (O. C., Phila.), has reported the proceeds of the settlement for information only, carrying the amount short. The accountant, as stated above, charges herself with principal assets in the amount of $67. Credits

(chiefly from advanced funds) exceed $1,500, so that there is no balance for distribution. An inheritance tax affidavit has been filed reporting the amount of the recovery in the United States Court for information, not as a taxable asset. The taxable estate reported is $67. Debts and deductions have been allowed in the sum of $1,641.25. The estate has not yet been appraised, pending the outcome of this audit. The Commonwealth, at this point, claims such tax as may be due and assessed.

Under the law of Pennsylvania it is well established that ". . . where a death is caused because of the negligence of a defendant, two actions may be brought against the tortfeasor after the death, viz.: (1) a 'death action' which under statute is for the benefit of enumerated relatives, measured by the pecuniary loss occasioned to *them* and (2) a 'survival action', a right which *continues* after death in the deceased's personal representatives. The damages recoverable in this suit are measured by the pecuniary loss *to decedent* and therefore accrue to *his estate*. Whatever is recovered *forms part of deceased's estate*": Pantazis v. Fidelity and Deposit Company of Maryland, 369 Pa. 221, 224.

In 1942, Mr. (later Chief) Justice Stern, writing for a unanimous Supreme Court in Pezzulli v. D'Ambrosia, 344 Pa. 643, 646, 647-48, stated:

"Under the present statutory law of Pennsylvania, if a suit for personal injuries is brought during his life by the person injured no other action of any kind is maintainable even though he subsequently dies of his injuries (Act of April 15, 1851, P.L. 669, section 19). His death, however, does not abate the action brought by him; his personal representative may be substituted as plaintiff and the suit prosecuted to final judgment and satisfaction (Act of April 15, 1851, P. L. 669, sec-

tion 18, repealed but re-enacted by Act of June 7, 1917, P. L. 447, section 35 (a) ). Where the suit instituted by the injured person is continued after his death by his executor or administrator, the same damages are recoverable as those to which the deceased would have been entitled had he survived until verdict and judgment: [citing cases]. The elements of permissible recovery in such a case are well established—pain and suffering until the time of death, and the economic value of the life as measured by the present worth of likely earnings during the period of life expectancy, the diminution in earning power being total because of the death: [citing cases].

"Under the present statutory law of Pennsylvania, if a suit for personal injuries is *not* brought during his life by the person injured two actions may be brought after his death (as they were in the present instance) for the recovery of damages—one under the acts of 1851 (section 19) and 1855, the other under the act of 1937. Such actions are entirely dissimilar in nature. The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence; the damages recoverable are measured by the pecuniary loss occasioned to *them* through deprivation of the part of the earnings of the deceased which they would have received from him had he lived. The other is not a new cause of action at all, but merely continues in his personal representatives the right of action which accrued to the deceased at common law because of the tort; the damages recoverable are measured by the pecuniary loss occasioned to *him,* and therefore to *his estate,* by the negligent act which caused his death. These actions are cumulative and not alternative; indeed the legislature amended the death act of 1855 by the Act of April 1, 1937, P. L. 196, at the same session at which it passed the survival statute. There is noth-

ing novel or unusual in the law giving a right of redress to two or more persons for the infliction of a single personal injury; illustrations are causes of action accruing to the husband as well as to the wife for injuries sustained by the latter, and to the parents as well as to the child who is injured by negligence. It is, however, important that the two actions, the one under the death acts and the other under the survival statute, should not overlap or result in a duplication of damages and thereby compel the tortfeasor to pay more than the maximum damage caused by his negligent act."

As appears from the record, no action was brought following the death of John J. Olson because the latter had commenced a suit in his lifetime, which suit by the force of statute became a bar to any subsequent action for wrongful death resulting from "unlawful violence or negligence" of defendant. Stopped from additional litigation by this bar, plaintiff's counsel nevertheless argues that in the settlement negotiations the claim for damages by plaintiff was built up on proof of the losses suffered by the widow and her dependent children as evidenced by the original order entered by Judge Clary under date of March 30, 1960. Said order approved a division of the balance of $141,017.51 in such manner "that the awards to the children are each in sufficient amount to produce at the age of eighteen years the sum of $14,000 to pay for the advanced education of each child." The amount payable to Marie Olson, individually, was fixed at $87,240.46. On April 29, 1960, Judge Clary, "upon reconsideration of plaintiff's petition for approval of settlement, filed March 30th, 1960," approved the gross settlement of $215,000 as aforesaid, together with the counsel fee, costs and the subrogation claim, and concluded as follows:

"5. That the plaintiff Administratrix be and she is hereby authorized to execute a release exonerating the defendant from any and all liability arising out of the

death of John J. Olson upon payment to her as Administratrix of the Estate of John J. Olson, deceased, of the sum of $215,000.00, less the sums set forth in Paragraphs 2, 3, and 4 of this Order, which sums totaling $73,982.49 defendant is authorized to pay directly to the named persons.

"6. That the sum of $141,017.51 remaining be paid to Marie Olson as Administratrix of the Estate of John J. Olson, deceased, and thereafter administered by the Courts of Pennsylvania, pursuant to the applicable laws of the Commonwealth of Pennsylvania and the provisions of 20 P. S. Secs. 1151, 1152 and 1153."

The statute cited in the court's order is the Act of July 28, 1953, P. L. 659, secs. 1, 2 and 3. The title to that act reads, in part, as follows: "An Act Empowering a court in which is pending an action on behalf of the estate of a decedent to make an order approving a compromise or settlement of such action; . . ."

Section 1 of the act provides, inter alia: "Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of the estate of a decedent, any court in which such action is pending and which has jurisdiction thereof may, . . . make an order approving such compromise or settlement." As stated by President Judge Klein, writing for our unanimous court in Trigg Estate, 86 D. & C. 76, the purpose of this statute was "to correct this troublesome situation" resulting from the Pantazis decision that an administrator lacked authority as fiduciary to release his decedent's estate without leave of the orphans' court. It was hoped that orphans' court judges who are "for the most part unfamiliar with the practice in trespass cases" would be relieved of the responsibility of approving settlements in such cases by those judges authorized to try them and consequently having more experience with the problems involved.

Judge Clary's direction that this fund, when received by the administratrix, should be "administered by the courts of Pennsylvania, pursuant to the applicable laws of the Commonwealth of Pennsylvania and the provisions of" the Act of 1953 is a direct reference to the survival action, because the Act of 1953 applies only to such actions: Wexler v. Phila. Transpor. Co. 3 D. & C. 2d 122. By section 2 of that act, Judge Clary's order is not subject to collateral attack in this court. It is also obvious that Judge Clary, "the case having been pre-tried by [him] and the settlement having been effected at the pre-trial," must have approved a settlement which was consistent with the only cause of action available to the substituted plaintiff, i.e., the survival action.

Plaintiff's counsel enjoy a well-earned reputation as experts in the successful conduct of plaintiffs' suits for damages arising out of negligence claims. Undoubtedly they were fully aware that a survival action commenced by the personal representative reduces the damages recoverable by deduction for the probable cost of decedent's maintenance during the years he would have lived had the accident not occurred: Radobersky v. Imperial Vol. Fire Department, 368 Pa. 235. There is no such deduction when the action is commenced by the injured party and continued by his personal representative. By eliminating this deduction, however, counsel did lose the right of action for a wrongful death under section 19 of the Act of April 15, 1851. An additional suit for wrongful death, therefore, would have availed them nothing.

Such was the decision of our Supreme Court in Taylor's Estate, 179 Pa. 254, where the personal representatives, just as here, charged themselves with none of the proceeds of the settlement in a death case but reported the same for information only as the property of the minor children which should be transferred to

themselves in their capacity as guardians. The action of the lower court in awarding the entire sum to the decedent's estate was affirmed by our Supreme Court which held that its earlier decision in the related case of Birch v. Railway, 165 Pa. 339, precluded the guardians from maintaining a claim to any part of the settlement as a wrongful death recovery. The holding in Birch was that the mother's personal representatives were the proper parties to carry on a suit started by her while alive, and the children's guardians had no right of action under the Acts of 1851-1855 because of that prior suit.

While counsel and his witnesses state that in negotiating the settlement he was calculating damages available under a wrongful death action as well as a survival action, he can offer no decisions as precedents to sustain recovery on such basis. There is nothing in the orders signed by Judge Clary or the proposed schedule of distribution annexed to his order of March 30th that would support counsel's contention. The proposed allotments to the minor children find no support in either the statutory or case law of Pennsylvania. Where dependent children share a recovery under the wrongful death act with their surviving parent, the distribution is pursuant to the intestate laws just the same as when the fund is distributed as part of decedent's intestate estate: Gaydos v. Domabyl, 301 Pa. 523; Allison v. Powers, 179 Pa. 531; North Pennsylvania Railroad Co. v. Robinson, 44 Pa. 175.

Counsel earnestly contends that the nature of the fund recovered by compromise of plaintiff's claim is dependent upon the nature of the compromise, and not upon that of the prior claim. Authorities are cited which sustain a compromise, subsequently breached, even though the original claim was nonexistent as a matter of law. One can readily see, however, that weakness, or even nonexistence, of the original claim of

either party cannot sustain a breach, for "The very object of compromise is to avoid the risk or trouble of that question": Zentmyer v. Zentmyer, 69 Pa. Superior Ct. 496, 499.

Here we have no breach of settlement by a party. Instead, we have an effort by the successful claimant, having the full settlement in hand, to wholly disclaim the only cause of action which was available to her and thus avoid liability for inheritance taxes which are levied on the estates of all solvent decedents. In Pantazis v. Fidelity & Deposit Co. of Maryland, supra, our Supreme Court held (prior to the passage of the 1953 Act) that an administratrix could not surrender in the compromise of a death action the rights of the estate in the survival action without first obtaining the approval of the orphans' court and, therefore, any settlement made by the adminstratrix without the court's sanction must, of necessity, include only claims under the wrongful death act. In other words, the only available cause of action leading to a settlement must be held exclusively to have been the basis for settlement.

In Taylor's Estate, supra, which was decided by our Supreme Court in 1897, and which we believe disposes of the contentions of counsel for the present administratrix, the court spoke emphatically and unequivocally, as follows (p. 259) :

"Prior to the decision of Birch's Appeal, 165 Pa. 339, the guardians of Mrs. Taylor's children had brought an action against the railroad company on behalf of their wards claiming the right to recover, notwithstanding the action brought by Mrs. Taylor herself to which her administrators had succeeded. The decision in Birch's Appeal was fatal to this contention, and determined that under the act of 1851, as also under that of 1855, the company was liable to but one

action for the recovery of damages for the same injury to the same person. The action begun by the injured person having survived her, and the right to prosecute the same to 'final judgment and satisfaction' having been vested in her administrators, the damages suffered as the result of the injury were recoverable in that action and in that alone. The railroad company, however, insisted on the disposition of all pending actions against it on account of the injury received by Mrs. Taylor, and the guardians accordingly joined the administrators in releasing the company from all further liability. As they had no claim to release, their joinder was a matter of form merely. It was superfluous. No right of action in them was extinguished by it, and it was perfectly clear that no interest, several or undivided, in the money paid to the administrators was acquired because of it. But it is suggested that their joining in the release at the request of the railroad company may be treated as the compromise of a doubtful claim, and that on this ground some part of the money paid should be awarded to them. There is however no evidence tending to show a settlement with the guardians, or the payment to them of a price in consideration of their release. They joined in the release to enable the administrators to conclude a settlement, and they well knew at the time that they had no valid demand against the company. It had been so held in Birch's Appeal already referred to, and the testimony shows that no attempt was made to compromise with them . . .''

Here, just as in the Birch and Taylor cases, the same individual represented all parties having interests under both causes of action. Here, differing from Birch and Taylor, the administratrix brought no separate suit under the wrongful death act. This court cannot close its eyes, however, to the fact that no separate action could have prevailed because of the express sta-

tutory bar. Clearly, it would be against public policy to recognize the compromise recovery in this case as based on any but the cause of action which the law made available to the adminstratrix, i.e., the survival action. The damages recovered in the United States District Court by settlement must be held to be for the pecuniary loss to decedent and as accruing to his estate, regardless of the arguments, or yardstick, used by plaintiff's counsel to compile them. It follows, then, that distribution of the balance after bringing the $141,017.51 into the account will be under the Intestate Act of April 24, 1947, P. L. 80 . . .

And now October 13, 1961, the account is confirmed nisi.