## Thistle's Estate.

*Wills—Illegal accumulations—Intestacy.*

1. Where a testator, purporting to dispose of his entire estate, fails, through a violation of Sec. 9 of the Act of April 18, 1853, P. L. 503, relating to accumulations, to dispose of such accumulations as he intended, the accumulations will, under the terms of the act, go to "such person or persons as would have been entitled thereto if such accumulations had not been directed." If the testator's three daughters and a son answer to such persons, all four will be entitled to share in the income, although the will disclosed that it was the intention of the testator that the son should have no share of the residuary estate, either corpus or income.

*Wills—Trusts and trustees—Active trust—Vested and contingent estates—Illegal accumulations.*

2. The striking down of illegal accumulations in a will, leaves the will as if it had been silent on the subject, and future gifts are not accelerated; if the accumulations relate to a vested interest taking effect in possession, the released income goes at once to the beneficiary; if to an interest not vested in possession, the income goes to the residuary legatee or devisee, unless the residuary estate itself be the subject of the provision, in which case the income goes under the intestate laws to the next of kin.

3. A testator directed his trustee to convert his residuary estate into money and invest the same and pay an annuity of $2,000 to each of his three daughters for a period of five years after his death, and at the end of the same period the sum of $10,000 to each of his daughters. He further directed that at the expiration of fifteen years after his decease, the remainder, including all accumulations, was to be divided equally among his three daughters, "but in case either of my said daughters shall die without leaving lawful issue then living, prior to the date of the distribution, then

her share shall go to her sisters and the issue then living of any daughter who may have died prior thereto shall take his or her mother's share." *Held,* (1) that the daughters were not the present beneficial owners of the principal from which the income was derived, and were therefore not in a position to claim the income as legatees with absolutely vested interests; (2) that the daughters were not entitled to claim the present payment and delivery to them of the principal from which the accumulated income accrued, inasmuch as the will created a valid active trust to continue until the time set by testator for final distribution; (3) that the income was distributable to the testator's three daughters and his son under the intestate law, although the will indicated that the son should have no share of the residuary estate, either corpus or income.

Argued Oct. 11, 1918. Appeals, Nos. 148, 149 and 150, Oct. T., 1918, by Mildred B. Thistle, Helen Thistle Lambie and Catherine Thistle Connell, from decree of O. C. Washington Co., Feb. T., 1918, No. 40, dismissing exceptions to auditor's report in Estate of Joseph L. Thistle, deceased. Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and FOX, JJ. Affirmed.

Exceptions to auditor's report.

*Errors assigned* were in dismissing exceptions to auditor's report, and in decreeing distribution.

*John C. Bane,* with him *R. H. Meloy,* for appellants.— The daughters were entitled to income as legatees: Manderson v. Lukens, 23 Pa. 31; Rau's Est., 254 Pa. 464; Letchworth's App., 30 Pa. 175; Long's Est., 228 Pa. 594; Smith's App., 23 Pa. 9; McClure's App., 72 Pa. 414; Packer's Est., 246 Pa. 116; Carstesen's Est., 196 Pa. 325; Smith's Est., 226 Pa. 304; Martin's Est., 185 Pa. 51.

There was no valid trust: Neel's Est., 252 Pa. 394.

*John R. McCreight,* with him *C. L. V. Acheson, J. Boyd Crumrine, W. A. H. McIlvaine* and *Harry L. Wil-*

*liams,* for appellee.—The income, the accumulation of which violates the Act of 1853, must be distributed as of the time it accrues: Rhodes' Est., 147 Pa. 227; Howell's Est., 180 Pa. 515.

The interests bequeathed by the testator in item seventh of his will are not vested but contingent: Paxson's Est., 241 Pa. 452; Battenfeld v. Kline, 228 Pa. 91.

*Norman E. Clark,* with him *Winfield McIlvaine,* for the trustee, appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4, 1919:

The correct interpretation to be placed upon item seven of the will of Dr. Joseph L. Thistle, deceased, which disposes of his residuary estate, and the effect of the not directly expressed but plainly implied intention that testator's son shall not share therein, are the broad questions here for consideration; they arise out of an award of illegally accumulated income, made by the Orphans' Court, on the adjudication of the account of decedent's executor.

The controversy, between the three daughters of Dr. Thistle on one side and his son on the other, and the scope of the decree appealed from, are well presented by the following excerpt from the paper book of the former, who are appellants in this court: "At the audit, appellants contended they were entitled to payment of all the accumulations of income which accrued between the date of testator's death and settlement of the account, on the portion of the estate included within item seven of the will, and also that they were entitled, presently, to payment and delivery of all the principal of this portion of the estate......Archibald Thistle [the son] contended these accumulations of income were distributable, under the intestate laws, to the three appellants and himself in equal proportions, and denied the right of appellants to payment and delivery, presently, of the princi-

pal of this portion of the estate. The auditor found and reported......that the accumulations were distributable, under the intestate laws, to appellants and Archibald Thistle, in equal proportions, and that appellants were not entitled, presently, to payment and delivery of the principal of this portion of the estate"; both of these conclusions, affirmed by the court below, are attacked on this appeal.

Before discussing the part of the will with which we are particularly concerned, it seems expedient to summarize the instrument as a whole, placing the item in question (No. 7), out of order, at the end.

The will is dated April 11, 1911, and consists of nine items: the first directs the liquidation of debts and funeral expenses; the second gives $15,000 to each of testator's three daughters, to be paid within sixty days from his death, excepting "Mildred's" share, which he directs shall not be paid until her twenty-first birthday, December 2, 1915; the third directs that, in addition to the $15,000 given to Mildred, his executor is to pay all her necessary expenses for support, clothing and education, to the last-named date; the fourth creates a spendthrift trust, in the sum of $25,000, for the benefit of his son, reciting that testator had already given to this legatee "considerable sums of money," and stipulating that if any part of the fund "shall remain after the demise and burial of my said son, such remainder shall revert to my residuary estate"; the fifth bequeaths to his three daughters all of testator's household goods, furniture, books, bric-a-brac, etc.; the sixth creates a trust fund in the sum of $25,000 for the benefit of decedent's grandson and, "incidentally," its mother, the former being the child of his son, the legatee named in item four; the eighth provides that "the reversionary estate, if any," resulting from the trust created by items four and six, shall be divided and distributed among his three daughters and grandson, or their living legal descendants; the ninth names the accountant as executor, and revokes

former wills; the seventh, being the item in controversy, reads thus: "All the rest, remainder and residue of my estate, real, personal or mixed, whatsoever and wheresoever, I order and direct my executor to convert into money (except such stocks, bonds and other securities as in the judgment of my executors are then safely and well invested) as soon as can conveniently and expediently be done after my decease, and for this purpose I hereby authorize and empower my said executor hereinafter named, in its discretion as to time, to sell and dispose of all of my real estate either at public or private sale for the best price that can be got for the same, and by proper deed or deeds grant and convey the same to the purchaser or purchasers thereof. The proceeds of all such sales to be invested by my said executor at interest on bond and mortgage, or in such corporate bonds or securities as may be approved of by my said executor, and the proceeds of these sales, together with the securities approved of as safe, and all accumulations thereon, to be held in trust for the following uses and purposes: (1) To pay out of the net rents, interest and income received therefrom unto each of my three daughters aforesaid, for a period of five years, the sum of two thousand dollars per annum in quarterly payments, so that the same shall be for the sole and separate use of each of them, but the annuities thus alloted to my daughter Mildred, prior to Dec. 2, 1915, shall be retained and invested for her until that date: (2) At the expiration of five years after my death I authorize and direct my executor to pay to each of my said three daughters the sum of ten thousand dollars: (3) At the expiration of fifteen years after my decease I direct that the remainder of my estate including all the accumulations of interest and income whatsoever, excepting the two trust funds mentioned in item fourth and sixth shall be divided and distributed equally among my three daughters, share and share alike, but in case either of my said daughters shall die, without leaving lawful issue then living, prior to the date of this dis-

tribution, then her share shall go to her sisters, and the issue then living of any daughter who may have died prior thereto shall take his or her mother's share."

It will be noted that, when the references to accumulations are left out of consideration, the only provision for the payment of income contained in item seven, is the direction to give each daughter $2,000 per annum for five years, in quarterly payments; and the fund here in question represents income (over and above that used for this purpose) accumulated during the period between testator's death, May 5, 1917, and the settlement of his executor's account, December 12, 1917. It may be noted also that the other sections of the instrument shed no controlling or helpful light upon our inquiries as to the meaning of item seven; in which respect this case differs from Ferguson's Est., 223 Pa. 530, 534.

Although not expressly so stated in the will, it is apparent, from the provisions previously made for Archibald Thistle and family, that his father did not intend him to have any part of the residuary estate, either corpus or income; but, so far as the allotment of income illegally accumulated is concerned, "no effect should be given to [this] intention of the testator, and the distribution should be in accordance with the statute [intestate law] without regard to the will" (Howell's Est., 180 Pa. 515, 519); unless, indeed, the three daughters can be held to have taken, at the death of their father, such a vested interest in the corpus of the trust estate, from which the income in question is derived, as (disregarding the implied direction for accumulation) would entitle them to such income, from time to time, when received by their trustee. If, under decedent's will, appellants have such an interest, then they must be awarded the whole of the present fund; but, if not, it passes under the intestate law; and, as before said, their brother will share in the distribution thereof, even though testator intended otherwise.

The conclusion last stated is inevitable; just as in any other case where one who has made a will, purporting to dispose of his entire estate, through some transgression of law, happens to die intestate as to a portion of his possessions, and these, under the statutes of distribution, go, in whole or in part, to persons whom it is apparent, from the body of the will, testator did not mean to benefit. For example, where persons entitled as heirs under the statute, are intentionally omitted from a will, but, subsequently, through enforced intestacy, take property the testator never intended them to have; which, as we all know, frequently occurs.

Appellants admit, as they must, that "the accumulation of income impliedly directed by testator......is forbidden by the Act of 1853, and is illegal." This is the transgression in the present case. What is its effect?

Section 9 of the Act of April 18, 1853, P. L. 503, 507, against undue accumulations of "rents, issues, interest or profits," provides, inter alia, that, in each instance, all such income "shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed"; with reference to this provision, that eminent jurist, the late Judge PENROSE, in White's Est., 8 Dist. R. 33, 35 (quoted and approved in Weinmann's Est., 223 Pa. 508, 510, 513), states: "The striking down of the illegal accumulation leaves the will as if it had been silent on the subject, and future gifts are not accelerated; if the accumulation relates to a vested interest taking effect in possession, the released income goes at once to the beneficiary— if to an interest not vested in possession, the income goes to the residuary legatee or devisee, unless the residuary estate itself be the subject of the provision, in which case the income goes under the intestate laws to the next of kin," citing authorities.

Here, "the residuary estate itself is the subject of the provision"; so the controlling question on this branch

of the case is, do the accumulations in controversy represent income accruing on a "vested interest taking effect in possession"? In other words, have the daughters the present beneficial ownership of the principal from which this income was derived; or, stating it another way, are they the sole parties for whom the trustee holds the accumulated income, with nothing standing between them and the right to receive such income save the illegal direction, express or implied, that it shall be accumulated?

Examination of the testamentary disposition under discussion will show appellants have no such estate. In the words of the learned court below, "The daughters are not the only persons interested in the trust; their shares, even if vested, are, as the auditor expresses it, 'not absolutely vested'; there are contingent interests in favor of others; the share of each daughter, assuming it to be vested, is defeasible, in certain alternative events, in favor of her own issue, born and unborn, or in favor of the issue, born and unborn, of her sisters, as well as in favor of the sisters themselves. The events upon occurrence of which such defeasibility is to operate are contingent events to occur at a future time fixed by the testator; he unquestionably intended that, if at that future time certain contingencies shall occur, the estate, or one or more shares thereof, shall go to distributees other than a daughter or daughters." This being the case, appellants are not in a position to claim the income as legatees under their father's will.

For cases, in addition to those already cited, where testators are held to have died intestate as to accumulations accruing through the operation of trusts created by will, see Martin's Est., 185 Pa. 51, which has some points of similarity to the case at bar; Walters's Est., 223 Pa. 598, 600, 602; Washington's Est., 75 Pa. 102, as explained in Wright's Est., 227 Pa. 69, 73, 74 (which latter in effect overrules Farnum's Est., 191 Pa. 75); Sternbergh's Est., 250 Pa. 167; Neel's Est., 252 Pa. 394, and Nagle's Est. (No. 1), 63 Pa. Superior Ct. 93.

King's Est., 210 Pa. 435, 436, is an instance where (after the testamentary provision, the working of which caused an illegal accumulation, was stricken out) the legatees named in the will were, under the law, still in a position entitling them, as such, to receive the income brought forward for immediate distribution. There testator left one-third of his estate in trust during his son's life, he to be paid the income; but, by a subsequent provision, these payments were limited to $5,000 per annum, all over that amount to be accumulated and added to principal, and, at the death of the son, such principal, with the accumulation, to go to the latter's children and their heirs. Afterwards by a codicil, these grandchildren were substituted in their father's place as payees of the income. It was held (p. 439) that "even conceding accumulation was part of the [testamentary] scheme," the trust must continue pur autre vie (i. e. for the life of the son) and, in the meantime, the released, illegally accumulated, income should go to those for whom it unquestionably was eventually intended—the son's children; but it will be noted that the equitable limitation was to such children and their heirs, with no limitation over on default of heirs. Hence, in that case (with the direction that brought about the illegal accumulation stricken out), the children, respectively, were vested with an immediate interest in their shares of the trust estate, which, pending the time for ultimate distribution, was not liable to defeat by any contingency; and this drew to it the released income. All of which is quite different from the case at bar.

Before taking up the next matter for consideration, it may not be amiss to call attention to the fact that testator's intention that no one should enjoy any part of the income now distributed until "the expiration of fifteen years" after his death, and his daughters not even then, unless alive, is as plain, if not plainer, than the intent not to give his son any share whatever therein, insisted upon by appellants and hereinabove discussed; but both

of these purposes are defeated because, in making his will, decedent transgressed the plain letter of the declared public policy of the State. As a consequence, until the date for final distribution of the principal arrives, all testator's children will share such income, as those entitled at law; for, as already noted, no one is in a position to lay claim thereto under the will. In so ruling, the court below did not err: see Rhodes's Est., 147 Pa. 227, 231, 232.

We shall now consider appellants' contention that they "are entitled, presently, to payment and delivery of all the principal," composing the portion of the estate upon which the income here in question accrued. In doing this, it may aid to recite anew the seventh item of the will, eliminating all phraseology found therein which is not necessary to an understanding of the immediate point under discussion, and placing all references to accumulations in parentheses, so, for present purposes, the latter may be treated as stricken out. When the will is thus read, it will appear that testator, after directing the conversion of his residuary estate into money, vesting his executor with power of sale over real estate, and authorizing the latter to retain such personal securities as in its "judgment" might be deemed safe, provides that the fund shall "be invested by my said executor at interest on bond and mortgage, or in such corporate bonds or securities as may be approved of by my said executor"; then, that all "proceeds" of sales and "securities approved of as safe" ("and all accumulations thereon") are "to be held in trust for the following uses and purposes": First, to pay out of such income, to each daughter, "for a period of five years, the sum of $2,000 per annum in quarterly payments." Next, "at the expiration of five years" after testator's death, to pay to each of his daughters the sum of $10,000. Finally, he provides, "at the expiration of fifteen years after my decease I direct that the remainder of my estate (including all the accumulations of interest and income

whatsoever) shall be divided and distributed equally
among my three daughters, but in case either of
my said daughters shall die without leaving lawful issue
then living, prior to the date of this distribution, then
her share shall go to her sisters, and the issue then living
of any daughter who may have died prior thereto shall
take his or her mother's share."

The Act of 1853, supra, does not provide or intend
that a testamentary disposition containing a direction
for, or which necessarily brings about, unlawful accumu-
lations shall be void in toto, but merely that "such di-
rection shall be null and void," in so far as it trans-
gresses the law, or, in the words of the statute, "in so
far as it shall exceed the limits of this act."

It is quite clear that, leaving out of the will the parts
above enclosed in parentheses, which are the void
directions, the above testamentary provisions (aside
from their effect in bringing about an unlawful accumu-
lation of income, which also must be treated as though
it were a direction exceeding the limit of the act, and,
therefore, void: Neel's Est., 252 Pa. 394, 409, 414),
create a valid active trust to care for and keep intact
the corpus of decedent's residuary estate until the time
set by him for final distribution. To again quote from
the opinion of the court below, "The estate being per-
sonalty, the only way that he could insure the carrying
out of this purpose [the distribution of principal, fifteen
years after testator's death] was to have the estate held
in trust, and withhold it from his beneficiaries until it
shall be determined, by the occurrence of the events to
which the will refers, who shall become entitled to re-
ceive it"; and the fact that the executor is not termed a
trustee makes no material difference in this regard: see
Sheets's Est., 52 Pa. 257, 266.

There is no ground which would justify a ruling that
the sole purpose of decedent was to create a trust for
accumulation of income; since, disregarding the pro-
visions with reference to such accumulations, the will

indicates an unequivocal desire on the part of the testator that his residuary estate shall not be finally distributed for fifteen years, and that, during such period, it is to be held in trust and conserved by the corporation named as executor, upon whom he places active duties. This is sufficient to create a valid subsisting trust, which the court would hesitate to disturb, even at the instance of all parties in interest; and which could not be set aside when, as here, those so requesting may not, when the time comes for final distribution, be the ones entitled to participate therein. For cases upon this general subject see those summarized by Mr. Justice MESTREZAT, in Henderson's Est., 258 Pa. 510. We conclude that the learned court below did not err in declining to declare the trust at an end.

The discussion, contained in the arguments of counsel, the report of the auditor and the opinions of the court below, ranges over a large field, and many authorities dealing with the subject of contingent and vested remainders have been cited to us; but, in the words of the last-mentioned tribunal, since "it seems clear testator intended the gift to his daughters, even if vested sub modo, to be a future gift, within the meaning of White's Est., supra, just as truly as if he had given a precedent life estate, he undoubtedly intended that the contingencies upon which the limitations over depend shall be determined before distribution is made, and that the daughters shall not be entitled to take the estate beneficially before that time." This being so, it matters not, for purposes of the present case, how the estates, or interests, of appellants may be technically termed; and therefore we have not, and shall not, enter upon a discussion of that subject.

The assignments of error are overruled, and the decree is affirmed at cost of appellants.

FRAZER, J., dissents.