## Pantazis, Appellant, *v.* Fidelity and Deposit Company of Maryland.

Argued November 16, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

A. *Albert Gross,* with him *Frances H. S. Ede* and *Gross, McGiffert & Herster,* for appellant.

*Herbert Fishbone,* with him *Calvin F. Smith* and *Smith, Paff, VanSickle and Fishbone,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 7, 1952:

The appeal is from an order of the court of common pleas of Northampton County decreeing that in a suit upon the appeal bond of a corporate surety, a motion for judgment on the pleadings should be held in abeyance pending the determination of proceedings in the orphans' court.

Frances Pantazis, individually and as administratrix, instituted an action in trespass against Edward Follweiler for damages growing out of an automobile accident involving the death of her husband. Plaintiff's claim as widow was in a "death action", whereas her claim as administratrix was a "survival action." An examination of the record discloses that upon trial plaintiff *in the death action* suffered a voluntary nonsuit. "Individually and as widow", she had released the defendant *Edward* Follweiler (the owner of the car), *Robert* Follweiler, its operator, and also the State Farm Mutual Automobile Insurance Company, the indemnity insurance carrier of the defendant. The named consideration was $1,500. The trial proceeded

in the survival action, with plaintiff *as administratrix.*
The jury rendered a verdict for the plaintiff-adminis-
tratrix for $7,280. The court refused defendant's mo-
tion for judgment n.o.v. Defendant appealed to this
Court. The Fidelity and Deposit Company of Mary-
land (the present defendant) with defendant in such
tort action, filed an appeal bond in usual form, in the
penal sum of $15,000. The surety company obligated
itself to pay the judgment, interest and costs, should
the principal (the defendant in the appealed action)
fail to *"prosecute the appeal with effect."* This Court,
in a per curiam opinion, reported in 364 Pa. 553, 73
A. 2d 410, affirmed the judgment. As the judgment
debtor did not pay the judgment, the *plaintiff-adminis-
tratrix* then instituted the present suit against the sure-
ty company on the appeal bond. An answer with new
matter was filed by the defendant to the complaint
(hereafter discussed). A motion was made by plain-
tiff for judgment on the pleadings. The court below de-
creed that action on the motion should be suspended and
held in abeyance pending proceedings instituted by the
*judgment debtor and his indemnity company in the tort
case* before the orphans' court having jurisdiction over
the settlement and distribution of the estate of plain-
tiff's deceased husband. This appeal followed.

The extraordinary obstructive tactics of the judg-
ment debtor and his appeal surety in their effort to
avoid paying the judgment, in our opinion, are entire-
ly unjustified and are without merit.

At the outset, where a death is caused because of
the negligence of a defendant, two actions may be
brought against the tortfeasor after the death, viz.:
(1) a "death action" which under statute is for the
benefit of enumerated relatives, measured by the pe-
cuniary loss occasioned to *them* and (2) a "survival
action", a right which *continues* after death in the de-
ceased's personal representatives. The damages recov-

erable in this suit are measured by the pecuniary loss *to decedent* and therefore accrue to *his estate*. Whatever is recovered *forms part of deceased's estate*. These principles are discussed at length in *Pezzulli, Admr., v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659 and *Siidekum, Admr., v. Animal Rescue League of Pittsburgh (et al.)*, 353 Pa. 408, 45 A. 2d 59.

The actions for "wrongful death" and "survival" were *tried* together. This was proper. Under Rule 213 (e) of the Pennsylvania Rules of Civil Procedure, it is provided: "A cause of action for the wrongful death of a decedent and a cause of action for his injuries which survives his death may be enforced in one action but if independent actions are commenced they shall be consolidated for trial."

It would appear from this complicated record that the obvious reason for this unusual and unnecessarily prolonged procedure is the effort of Edward Follweiler, the tort defendant, and his sureties (the indemnitor corporation in the tort action and the surety corporation on the appeal bond) to evade liability because Frances Pantazis *in the death action* received a valuable consideration and executed a release. Plaintiff, in one of the many proceedings in this case, entered into a written stipulation, wherein she admitted that she was the sole heir of her deceased husband and represented that there were no debts in the estate. It is now belatedly contended that plaintiff by her release not only released any interest she possessed in the *death action* but also released and assigned her distributive share in her husband's estate, involved in the *survival action*. This contention is spurious. Our examination of the tort record discloses that defendant, by his answer to plaintiff's claim, made the release an issue in that case. The judgment therefore became conclusive concerning the effect of such release in the survival action. In *Wallace's Estate*, 316 Pa. 148, 153,

174 A. 397, we said: "Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court." All that plaintiff released was her claim as an *individual* in the death action. As administratrix of her husband's estate, she lacked authority, as fiduciary, to release her deceased husband's estate. To do so required leave of the orphans' court, upon proper cause shown. Furthermore, she could not effectively stipulate, as fiduciary *in her husband's estate,* that there were no debts or taxes due. Only an audit and adjudication could determine that. Nor can plaintiff's release in the *death action* of her *individual* rights be regarded in the *survival action* as a release and assignment of her distributive share under the intestate laws in her deceased husband's estate. What the plaintiff receives in distribution in settlement of her husband's estate is what the *law* directs shall be paid to her *as her distributive share.* The situation is analogous to that of an heir excluded by will, and an intestacy thereafter results in another part of the will. In such circumstances the excluded heir nevertheless takes the intestate portion not under the *will* but under the *law*: *Thistle's Estate,* 263 Pa. 60, 106 A. 94; *Gibbons's Estate,* 317 Pa. 465, 177 A. 50; *Verner Estate,* 358 Pa. 280, 56 A. 2d 667.

What counsel for the original defendant, his corporate indemnitor insurance carrier and his corporate appeal surety, appear to have overlooked is that neither

the original defendant nor his indemnitor or appeal surety have the slightest status to supervise or intermeddle with the distribution of the proceeds from the judgment. It is a matter of judicial knowledge that corporate sureties on appeal to appellate courts, ordinarily require counter indemnity. The duty of sustaining the appeal, however, is the *primary* responsibility of the principal. It follows that if and when the Fidelity and Deposit Company of Maryland is required to pay this judgment, it will then call upon the principal (defendant Edward Follweiler) to reimburse it. Should defendant reimburse his surety, he will look to his original indemnitor corporation, the State Farm Mutual Automobile Insurance Company, to reimburse *him*. Obviously such matters merely affect the defendant and his sureties. They do not in the slightest degree concern the judgment creditor. After payment of the judgment—whoever pays it—defendant and his sureties may then contest this question among themselves, should it prove necessary.

Without reciting all the "collateral" proceedings (most of which were decided adversely to defendant without appeal, or remain undecided), the only one which requires attention is the petition, citation and demurrer, which we assume was in the orphans' court of Northampton County. This proceeding (undecided) sought to require plaintiff-administratrix to increase the fidelity bond as administratrix from $100 to $14,560, which is double the amount of the $7,280 judgment.

There is merit in this application. When the plaintiff-administratrix was granted letters of administration by the register of wills, apparently there were then no *known* assets. A nominal fidelity bond of $100 was therefore filed. As the fiduciary is about to receive the amount of the judgment, she must enter an additional bond. This is for the protection of creditors,

distributees and any interested party in the decedent's estate, including the Commonwealth. Should the plaintiff-administratrix neglect or refuse to so qualify herself by the entry of sufficient security in order to receive the fund, this may be enforced under sec. 324 of the Fiduciaries Act of April 18, 1949 P. L. 512, 20 PS 320, 324.

The order appealed from is reversed, and judgment is entered in favor of appellant, Frances Pantazis, administratrix of the estate of James Pantazis, deceased, and against appellee, Fidelity and Deposit Company of Maryland, in the amount of the original judgment, viz.: $7,280, with interest from the date of the verdict, April 22, 1949, with costs.