547 A.2d. 654

**GLOBE AMERICAN CASUALTY COMPANY**

v.

**Boo Hyun CHUNG, Personal Representative of the Estate of Bo Hyun Chung.**

No. 1581, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Sept. 29, 1988.

W. Barry Wraga (Galiher, Clarke & Galiher, on the brief), Rockville, for appellant.

George E. Meng (Greenan, Walker, Steuart & Meng, on the brief), Landover, for appellee.

Argued before MOYLAN, WILNER and ALPERT, JJ.

MOYLAN, Judge.

When a victim dies because of the tortious conduct of someone else, two entirely different types of claim may arise. One is a survival action commenced or continued by the personal representative of the deceased victim, seeking recovery for the injuries suffered by the victim and prosecuted just as if the victim were still alive. It is called a "survival action" in the sense that the claim has survived the death of the claimant. The other is a wrongful death action, brought by the relatives of the victim and seeking recovery for their loss by virtue of the victim's death. A deceptive similarity inevitably results from the prominent common denominator fact that the victim has died. In

other essential characteristics, however, the two types of claim are clearly distinct. The first arises from the tortious infliction of injury upon the victim; the second, only from the actual death of the victim. In the first, damages are measured in terms of *harm to the victim;* in the second, damages are measured in terms of *harm to others* from the loss of the victim. In the first, the personal representative serves as the posthumous agent of the victim; in the second, his surviving relatives do not serve as his agent at all. They act in their own behalf.

In some states, the distinction between the two types of claim has been lost—or badly blurred. In Maryland, in no small measure because of the landmark opinion of Chief Judge James McSherry for the Court of Appeals in *Stewart v. United Electric Light and Power Co.*, 104 Md. 332, 65 A. 49 (1906), that distinction has been meticulously maintained. The distinction is pivotal to this appeal.

### The Facts in This Case

At 11:30 p.m. on July 11, 1983, Bo Hyun Chung, the decedent, was operating his service station with his wife, Kum Ja Chung. Barbara Ann Orejuela drove into the station in a 1975 Chevrolet Monte Carlo. Ms. Orejuela filled her gasoline tank with $20.03 worth of gasoline. She then walked over to the cash register booth, told Kum Ja Chung that she had no money and offered the rings she was wearing as payment for the gasoline. Mrs. Chung referred her to the decedent. The two discussed the matter as they walked to the car, but no agreement was reached as to the form of payment. Suddenly, Ms. Orejuela drove away from the service station while the decedent was half leaning into the driver's side of the car. Mrs. Chung had remained in the cash register booth. Heedless of the decedent's cries to stop, Ms. Orejuela proceeded southbound on Maryland Route 355 while the decedent clung to the side of the car. At some point, the decedent was either thrown or fell clear

of the automobile. He died sometime later after his admission to the hospital.[1]

### The Liability of the Uninsured Motorist

Whether for the ultimate benefit of the personal representative, as he pursues the estate's vicarious claim for the bodily injury to the deceased; or for the ultimate benefit of the surviving relatives pursuing their wrongful death claim; or for the ultimate benefit of both, the liability of the uninsured motorist was established in the Circuit Court for Montgomery County. Pursuant to the provisions of Md. Cts. & Jud.Proc. Code Ann. § 3–904 (1984), Kum Ja Chung, on her own behalf as decedent's widow and also as mother and next friend of the decedent's minor child, filed a wrongful death action against Ms. Orejuela. Judgment was entered against Ms. Orejuela on June 21, 1985. The widow was awarded $250,000 compensatory damages and $250,000 punitive damages. The minor child was awarded $100,000 compensatory damages and $100,000 punitive damages.

Both Ms. Orejuela and the vehicle operated by her were uninsured. It was evident as well that Ms. Orejuela was insolvent. To the extent to which anyone might recover anything for the decedent's injury and/or death, it was obvious that such recovery would have to be through the decedent's own insurance policies.

### The Decedent's Insurance Policies

At the time of his death, the decedent maintained two policies of insurance. The first was with the Nationwide Mutual Fire Insurance Company (Nationwide). It insured against robbery and burglary.

On behalf of the decedent's widow, demand was made upon Nationwide for benefits in the amount of $6,000. Coverage was initially denied by Nationwide, thus prompting a suit for recovery by Boo Hyun Chung, the personal

---

1. At the time of his death, decedent and his wife had one minor child, Soon Woong Chung, and four others who were adults.

representative of the decedent's estate and the appellee upon this appeal. The appellee was granted summary judgment by the Circuit Court for Montgomery County. Nationwide forwarded to the appellee a check in the amount of $6,000, along with a release. The release was signed by the appellee on April 23, 1985.

Except for the arguable effect of that release on the obligation under the other insurance policy, the recovery under the policy from Nationwide does not figure further in this appeal. On this appeal, the battle swirls about the second insurance policy. That second policy was a motor vehicle liability insurance policy issued to the deceased by the appellant, The Globe American Casualty Company. As is required by Md.Ann. Code art. 48A, § 541(c)(2) (1957, 1986 Repl.Vol.) for every liability insurance policy issued in this state after July 1, 1975, there was included Uninsured Motorist (U.M.) coverage. The minimum required coverage, tied to Title 17 of the Transportation Article and to §§ 243H and 243I of Article 48A, was "up to $20,000 for any one person and up to $40,000 for any two or more persons." In terms of coverage, the pertinent words for present purposes of § 541(c)(2) are:

"... every policy ... shall contain coverage ... for damages which the insured is entitled to recover ... because of bodily injury sustained in an accident ..."

Should the victim who is injured by the uninsured or underinsured motorist live, there is no problem in interpretation. Only the victim may sue for damages because of bodily injury sustained in an accident. If the victim should die, however, the consequential litigation becomes more ambiguous. Does the statutorily required Uninsured Motorist coverage contemplate a survival action brought by the personal representative of the deceased or a wrongful death action brought by the surviving relatives of the deceased or both? If both, how is the $20,000 "cap" for one victim of bodily injury apportioned between the two claims? If either but not both, which type has priority? Will there be a race to the courthouse door or to the in-basket of the

insurance company's claims department? If one but not the other, which is contemplated by the statute mandating the coverage?

The question is squarely before us because in this case two claims were filed, one of each type, under the same Uninsured Motorist provision of the policy issued to the decedent by the appellant. After establishing Ms. Orejuela's liability and being awarded damages in the wrongful death action, the decedent's widow presented her claim to the appellant, pursuant to the decedent's insurance policy, for the satisfaction of the judgment obtained. The policy limited the insurer's obligation to $20,000 "per person" for bodily injury sustained by one person as the result of any one accident.[2] Whether required to under the literal terms of the policy or not, the appellant paid the decedent's widow $20,000 for the wrongful death claim. On August 21, 1984, the widow executed a written release discharging the appellant from any further liability.

The second claim against the same Uninsured Motorist provision of the same liability policy appeared on April 29, 1985. It was on that day that the appellee, Boo Hyun Chung, as the personal representative of the decedent's estate, instituted a survival action against the appellant, seeking payment of what then would have been an additional $20,000 under the Uninsured Motorist provision of the policy. On the basis of the $20,000 payment already made to the decedent's widow and the release executed by her, the appellant denied any further obligation under the policy. As the matter moved toward resolution in the Circuit Court for Montgomery County, cross-motions for summary judgment were filed by both parties. On July 13, 1987, Judge DeLawrence Beard denied the appellant's motion for summary judgment and granted the motion of the appellee/per-

---

**2.** Md.Transp.Code Ann. § 17–103(b) (1987 Repl.Vol.) requires coverage "of up to $20,000 for any one person and up to $40,000 for any two or more persons" for "bodily injury or death arising from an accident."

sonal representative for partial summary judgment, ruling that the estate through the personal representative was entitled to payment. The parties subsequently entered a consent judgment with the understanding that an appeal would follow. Upon this appeal, the appellant raises the following three questions:

1) Does the decedent's widow and his estate each constitute a separate "person injured" for the purposes of appellant's policy, or, are they various claimants seeking damages for the same person injured?

2) Did the release executed by the decedent's estate in favor of Nationwide Mutual Insurance Company act to discharge the appellant as well?

3) Does the release as executed by the decedent's widow in favor of the appellant discharge the appellant from further liability?

We agree with the appellant in terms of its answer to the first question, but do not agree that that answer is dispositive of the larger issue before us. Conversely, we hold in favor of the appellee/personal representative on the issue of his entitlement to recovery under the policy but do so for a reason different than that advanced by him.

### The $20,000 Limitation Under the Policy

Without arguing that the wrongful death action was not covered by the Uninsured Motorist provision, the appellee argues simply that he, as personal representative, is entitled to an additional $20,000 under the policy because there were two "bodily injuries sustained by two persons." Granting that the initial and primary bodily injury was suffered by the decedent directly, the appellee argues that the mental anguish, pain, and suffering experienced by the decedent's widow constituted a second "bodily injury" to her independent of the decedent's injury. The recent decision of the Court of Appeals in *Daley v. United Services Automobile Assoc.*, 312 Md. 550, 541 A.2d 632 (1988), is controlling on this issue. The Court of Appeals there held that solatium damages claimed in a wrongful death action

by parents, whose minor child was killed in an automobile accident, were not bodily injuries independent of the injury to the child. The Court held that the plaintiffs were only entitled to the single policy limits which apply when there is only one bodily injury.

### The Mandatory U.M. Provision Does Not Cover a Wrongful Death Claim

We nonetheless hold in favor of the appellee/personal representative, but for a very different reason. We read the clear terms of both the controlling statute and the Uninsured Motorist provision of the policy itself to limit the coverage to "the insured or his legal representative" for the bodily injuries suffered by the insured. Insurance policies are contractual and the court interprets the provisions of the policy based on their plain meaning. *National Indemnity Company v. Continental Insurance Co.*, 61 Md.App. 575, 487 A.2d 1191 (1985). *See also Bond v. Pennsylvania National Casualty Insurance Company*, 289 Md. 379, 424 A.2d 765 (1981); *National Grange Mutual Insurance Company v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979). The proceeds of an insurance policy are to be distributed according to the precise terms of the policy. In the instant case, the policy issued by the appellant requires it:

"To pay all sums which *the insured or his legal representative shall be legally entitled to recover* as damages from the owner or operator of an uninsured highway vehicle *because of bodily injury* or property damage, *caused by accident* and arising out of the ownership, maintenance or use of such uninsured highway vehicle ..." (Emphasis supplied).

The critical words to be focused upon in that provision are those which require the appellant to pay "all sums which the insured or his legal representative shall be legally entitled to recover as damages...." Appellant maintains that it has fulfilled this contractual obligation to its insured, the decedent. Appellant insists that "the decedent, through the wrongful death claim of his widow, has already made a

claim and received the 'per person' limit of liability under the policy contract." The survival action instituted by the legal representative to recover the sum legally entitled to the decedent's estate is nothing more, it claims, than an attempt to circumvent the language of the insurance contract "by presenting the same claim but by calling it another name." The appellant in effect claims that the ghost of the decedent is trying to collect twice. We disagree.

### The Two Actions Distinguished

The appellant treats a wrongful death action and a survival action as one and the same thing, or at least as alternate and essentially interchangeable remedies. Such is far from the case. In *Stewart v. United Electric Light and Power Co.*, 104 Md. 332, 65 A. 49 (1906), the Court of Appeals, through Judge McSherry, carefully traced the early history of Maryland's Wrongful Death Statute,[3] on the one hand, and the statute permitting a personal representative to recover those damages which his decedent might have recovered, had he lived,[4] on the other hand. The opinion threw into sharp relief the distinctions between the two:

" 'The points of difference between this statute [the Wrongful Death Statute] and the provisions of the Code giving to executors and administrators full power to commence and prosecute any personal action whatever which the testator or intestate might have commenced and prosecuted (except actions of slander and an action where the person causing the injury is dead) are striking and marked even upon a casual comparison of the two enactments. The suits are by different persons, the damages *go* into different channels, and are recovered

---

**3.** The Maryland Wrongful Death Statute is now codified at Md.Cts. & Jud.Proc.Code Ann. § 3–904 (1984 Repl.Vol., 1987 Cum.Supp.).

**4.** Md.Est. & Trusts Code Ann. § 7–401(x) (1974) gives a personal representative the power to continue or commence, *inter alia,* any personal action which the decedent might have commenced or prosecuted.

upon different grounds, and the causes of action though growing out of the same wrongful act or neglect, are entirely distinct.'"

104 Md. at 338–339, 65 A. 49.

The difference between a survival statute and a wrongful death action could not be more basic. The opinion first traced the development of survival actions. At the common law, the right of action for a tort abated upon the death of either the injured person or the tortfeasor. A series of statutes over the course of a century gradually ameliorated the harshness of the common law principle that "the action died with the person to whom or by whom the wrong was done." 104 Md. at 333–334, 65 A. 49. The Acts of 1785, ch. 80, first provided that personal actions, *if commenced in the lifetimes of plaintiff and defendant,* would not abate by the death of either party but would survive and could be maintained by or against the executors or administrators of either. A series of statutes between 1785 and 1888 added amendments not here pertinent. The precise scope of the cause of action, preserved by the survival statutes, was clear:

> "It is apparent, therefore, that the statutes, thus far considered, have relation only to a cause of action which the plaintiff himself had in his lifetime and upon which he had instituted suit whilst living. Hence these statutes give no new cause of action, but merely prevent a subsisting and a pending one from abating by the death of the plaintiff. That cause of action is in such instances devolved upon the executor or administrator and when ripened into *a judgment becomes an asset of the decedent for the benefit of his creditors, if he has any; or for the benefit of his legatees and distributees.*" (Emphasis supplied).

104 Md. at 336, 65 A. 49.

It is clear that the beneficiaries under a survival action are not necessarily the same as the beneficiaries under a wrongful death action. They may, of course, be identical. There may be simply a significant overlapping of the two

classes of beneficiaries. There is, as well, at least the theoretical possibility that the two classes will be not only separate and distinct but hostile in terms of opposing interests. Creditors of the estate, for instance, may have interests adverse to those of the next of kin. The decedent, moreover, may have disinherited his relatives and provided for a class of "legatees and distributees" separate and apart from those who could bring a wrongful death action.

■ The right to bring a personal action was significantly broadened by the Code of 1888. Art. 93, § 104, provided that "Executors and administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted...." "Thus in 1888 for the *first* time executors and administrators were given full power to *commence* suits for the recovery of damages for personal injuries sustained by their testator or intestate in his lifetime." 104 Md. at 337, 65 A. 49 (Emphasis in original). In a survival action, in contrast to a wrongful death action, the death of the claimant need not have been as a result of the tortious injury but may have stemmed from a completely independent cause.

■ The Wrongful Death Statute, by contrast, was first enacted in Maryland by Acts of 1852, ch. 299. It, as well as similar statutes in every American State, was modeled on the English Fatal Accidents Act of 1846 (9 and 10 Vic., ch. 93), universally known as Lord Campbell's Act. *See McKeon v. State, Use of Conrad*, 211 Md. 437, 127 A.2d 635 (1956); *Flores v. King*, 13 Md.App. 270, 282 A.2d 521 (1971). Unlike a survival action, a wrongful death action arose not from the injury but from the death of the injured party. It was not for the benefit of the injured party but "for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused...." Judge McSherry's opinion emphasized the difference between these provisions:

"[T]he Code of 1888 giving for the first time full power to administrators to commence any personal action except for slander, went into effect thirty-six years after the adoption here of Lord Campbell's Act in 1852; and it must be presumed that the Legislature intended by the provision in the Code of 1888 to give a remedy for the injuries which the Act of 1852 did not cover. To say that the two enactments are merely alternatives of each other ignores the genesis of this legislation and in effect asserts that though the Legislature distinctly and in definite terms prescribed how and by whom the suit should be brought under the Act of 1852 still thirty-six years afterwards it adopted a wholly different method by which and designated a wholly different person by whom, the suit was to be commenced and prosecuted."

104 Md. at 339, 65 A. 49. Scrupulously to be avoided is a thoughtless identification of the two "in which event a race of diligence between the personal representative and the family of the deceased would determine whether the damages recovered would go in one direction or another." *Id.* In every characteristic, save only that a wrongfully injured party has since died, the actions are distinct:

"Under the Act of 1852 the damages recoverable are such as the equitable plaintiffs have sustained *by the death* of the party injured; under *sec. 103* the damages recoverable are only such as the deceased sustained in his lifetime and consequently exclude those which result to other persons from his death. Under the Act of 1852 the damages are apportioned by the jury among the equitable plaintiffs, and belong exclusively to them and form no part of the assets of the decedent's estate; under *sec. 103 of Art. 93* of the Code the damages recovered go into the hands of the executor or administrator and constitute assets of the estate. Under the Act of 1852 there is no survival of a cause of action—the cause of action is created by it and is a new cause of action and consequently one which the deceased never had; under *sec. 103* there

*is* a survival of a cause of action which the decedent had in his lifetime." (Emphasis in original).

104 Md. at 339–340, 65 A. 49.

The Wrongful Death Act, by contrast, is not a survival statute at all but creates a totally new cause of action. In *Tucker v. State, use of Johnson,* 89 Md. 471, 479, 43 A. 778, 44 A. 1004 (1899), the Court of Appeals said of the Wrongful Death Act:

"By it the jury may give such damages as they may think proportioned to the injury *resulting from such death,* and not such as the injured person could have recovered if he had survived. The injury for which the equitable plaintiffs are compensated is the pecuniary loss sustained by reason of the death of the person through the wrongful act, neglect or default of the defendant. The statute ... has not undertaken to keep alive an action which would otherwise die with the person, but, on the contrary, has created a new cause of action for something for which the deceased person never had, and never could have had the right to sue—that is to say, the injury resulting from his death." (Emphasis in original).

The logical conclusion of the Court of Appeals opinion was clear. Two distinct causes of action may be pursued independently and the disposition of one will have no foreclosing effect upon the other. "If, then, it be true that there are two separate, distinct and independent causes of action arising out of the same wrongful or negligent act, then it must follow that they may be prosecuted concurrently." *Stewart v. United Electric Light and Power Co., supra,* at 104 Md. 340, 65 A. 49.

The problem faced by many jurisdictions which recognize both actions is that of preventing double recovery. This problem is avoided when there is no duplication in the elements of damages between the two actions. W. Keeton, *Prosser & Keeton on Torts* (5th ed. 1984) points out, at 957–958:

"It is usually held that actions may be prosecuted under both death and survival acts, and that an action under one cannot be defended on the ground that recovery or settlement has been received under the other, at least so long as the beneficiaries are different and there is no duplication in the elements of damages." (Footnotes omitted).

Schumacher, *Rights of Action under Death and Survival Statutes*, 23 Mich.L.Rev. 114 (1924), analyzed in depth the overlapping natures of the two actions in some jurisdictions and the separate natures of the two actions in other jurisdictions. The author, at 126, pointed to Maryland as a jurisdiction that meticulously distinguishes the damages in a survival action from the damages in a wrongful death action, thereby avoiding the problem of duplication in the elements of damages:

"Thus in *Stewart v. United Elec. L. and P. Co.* it was said 'The trial judge can easily by proper instructions limit the recovery in a survival action to the loss actually caused to the deceased prior to his death,' or, in an action under Lord Campbell's Act, 'to the pecuniary loss sustained by the surviving relatives entitled to the benefits of that provision.'" (Footnote omitted).

However blurred the distinction may have become in practice, it is sharply edged in the controlling law. As *Stewart v. United Electric Light and Power Co., supra,* points out, at 104 Md. 342–343, 65 A. 49:

"The damages recoverable under the Act of 1852 and those recoverable under the survival statute embodied in *sec. 103 of Art. 93* of the Code, are entirely different. In determining the measure of damages the nature of the statute under which the action is brought is to be closely observed. If the statute is merely a survival statute, the recovery is limited to such damages as might have been recovered by the deceased himself, had he survived the injury and brought the action. If the statute, however, creates a new cause of action distinct from that which the deceased might have maintained, the measure of damages

is the pecuniary loss sustained by the parties entitled to the benefit of the action. In the one case, that is under the survival statute, the damages are limited to compensation for the pain and suffering endured by the deceased, his loss of time and his expenses between the time of his injury and his death ... In the other case, that is under the Act of 1852, the injury resulting from the death of a person is to be measured by the standard of the pecuniary value of the life of the person to the party entitled to the damages.... Or, as epigramatically stated in *Needham v. C.T.R. Co.*, 38 Vt. 294: 'Such damages to the widow and next of kin begin where the damage of the intestate ended, viz. with his death.' " (Citations omitted).

The Supreme Court was faced with a similar problem in the case of *St. Louis & Iron Mtn. Ry. Co. v. Craft*, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915). In holding that recovery was permissible under both a wrongful death action and a survival action, although based upon a single injury resulting in a single death, the Court held, at 237 U.S. 658, 35 S.Ct. 706:

"Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong."

*See also Michigan Central R.R. v. Vreeland*, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913).

In the years since *Stewart v. United Electric Light and Power Co.* was decided, Maryland has regularly and faithfully followed its guiding principles. In *Dronenburg v. Harris*, 108 Md. 597, 71 A. 81 (1908), the Court of Appeals observed, at 108 Md. 608, 71 A. 81:

"In the case of *Stewart v. The United Elec. L. & P. Co.*, 104 Md. 333, 65 A. 49, this Court held that the negligent killing of a person in this State gives rise, under the law of this State, to two causes of action, one by the executor or administrator of the deceased, for such damages as were sustained by him in his lifetime, for the benefit of his estate; and the other by the State, for the use of certain equitable plaintiffs, ... for such damages as they sustained *by the death* of the party injured. The first cause of action is the cause of action the deceased had, and which under the Code survives to his executor or administrator, for the benefit of his estate; while the cause of action under secs. 1 and 2 of Art. 67, is a new cause of action, created by them, and one which the deceased never had." (Citation omitted) (Emphasis in original).

In *Washington, Baltimore & Annapolis R.R. Co. v. State*, 136 Md. 103, 111 A. 164 (1920), the Court of Appeals observed, at 136 Md. 120, 111 A. 164:

"We held [in *Stewart*] that under Sec. 103 (now 104) of Art. 93 and Art. 67 there were two separate and distinct causes of action arising out of the same wrongful act, that Art. 67 created a new cause of action, one which the decedent never had, and the damages in it are measured by the pecuniary value of his life to his family, and are not part of the assets of his estate, that Art. 93, Sec. 103 (104), provided for the survival of a cause of action which the deceased himself had, that the sum recovered is an asset of his estate, and neither of those actions is a substitute for the other and both may be maintained concurrently."

As recently as *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972), Judge Levine stated for the Court of Appeals, at 267 Md. 158, 297 A.2d 721:

"The early history of Maryland's Wrongful Death Statute, the Survival Statute and the statute permitting a personal representative to recover those damages which his decedent might have recovered was carefully traced

by our predecessors in *Stewart v. United Electric Light and Power Co.,* 104 Md. 332, 65 A. 49 (1906). There, the differences between a wrongful death action and one brought by a personal representative were sharply defined."

■ With the fundamental distinctions between these two very different types of action in mind, we turn to the question of which type of claim, if not both, is referred to by the statutorily required Uninsured Motorist provision of liability policies in Maryland. There can be no question but that the reference is to the survival claim and not the wrongful death claim. The policy provision itself refers to "the insured or his legal representative." The thing that "the insured or his legal representative" is entitled to recover is "damages ... because of bodily injury." As the case law has made indisputably clear, surviving relatives in a wrongful death action have no claim for the bodily injury of the insured. Theirs is a new action based exclusively on death.

Any conceivable doubt in this regard is dissipated by reference to Md.Ann.Code art. 48A, § 541 (1957, 1986 Repl. Vol.), which mandates the Uninsured Motorist coverage. There the reference is only to "the insured ... because of bodily injuries sustained." There is no mention made of either legal representatives or surviving relatives. The inclusion of the term "or legal representative" in the Uninsured Motorist endorsement itself is nothing more than a recognition that a survival action would be available on behalf of the injured "insured" provided for by § 541.

That the statutorily required Uninsured Motorist provisions of liability policies should provide for the injured insured or his personal representative but not for the surviving next-of-kin is not hard to explain. The provision is primarily for the benefit of the injured insured, who in most cases will still be alive, to compensate him for his physical loss, pain, and suffering. The proviso that in the case of his death, his personal representative may initiate or continue to press his claim is but a routine recognition of the now

familiar principle that the injured insured's claim will not abate with his death. It is a claim with which the surviving relatives have nothing to do except to the extent that they are coincidentally the legatees of his estate. They might, of course, not be his legatees.

The recovery by the estate might ultimately be for the benefit of creditors or for named legatees other than the relatives. What is due "the insured" for his injuries is within his testamentary control and, therefore, passes through his personal representative. What is due him for his injuries accrues through his insurance policy. What is due his relatives for his loss, on the other hand, is not within his testamentary control and does not directly involve the deceased at all—his estate, his personal representative, or the Uninsured Motorist provision in his insurance policy.

The distinction, in direct reference to Uninsured Motorist coverage, was pointed out in *In re Estate of Reeck,* 21 Ohio St.3d 126, 488 N.E.2d 195, 199 (1986) (Holmes, J., dissenting):

> "The purpose of uninsured motorist coverage is to provide 'protection of *persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...' not to provide a fund for the benefit of any person not a party to the contract who might have some alleged cause of action against an uninsured motorist." (Emphasis in original).

Appellant's argument that it has satisfied its contractual obligation to the decedent by satisfaction of his widow's wrongful death claim will not withstand careful analysis. A wrongful death action does not recover assets to which the deceased is entitled. A wrongful death action in no way compensates the decedent. The gratuitous payment to the decedent's widow does not operate to discharge appellant's contractual obligation to pay the appellee the sum to which, by the express terms of the policy, "the insured or his legal representative shall be legally entitled."

### *The Release to Nationwide*

The appellant contends that the release procured by Nationwide from the appellee/personal representative on April 23, 1985, also operates to release all claims which the appellee has against appellant. Appellant argues that the broad language of the release compels this result. We disagree.

■ In general, written releases are construed according to the rules governing the interpretation of contracts. *Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602 (1981); *Ralkey v. Minnesota Mining & Mfg. Co.*, 63 Md.App. 515, 492 A.2d 1358 (1985). *See also* 66 Am.Jur.2d. *Releases* § 30 (1973). The parties' intentions are controlling in construing the instrument. *Panamerican Consulting Co. v. Broun*, 238 Md. 438, 238 Md. 548, 209 A.2d 575 (1965); *Wheaton Triangle Lanes, Inc. v. Rinaldi*, 236 Md. 525, 204 A.2d 537 (1964). A release normally covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.

The release at issue in the instant case stated, in part: "... I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge Nationwide Mutual Insurance Company and any and all other persons, firms, and corporations, whether herein named or referred to or not, of and from any and all past, present and future actions, causes of actions, claims *etc.* ..."

The appellant relies upon the phrase in the release insulating from further liability "any and all other persons, firms, and corporations" as effectively barring the claims appellee has against it.

■ The document before us does not release the appellant. In the blank space provided on the form for the name

of the party being released and discharged, the name "Nationwide Mutual Insurance Company" appeared. Although the phrase "any and all other persons, firms, and corporations" appeared following Nationwide's name, the release did not otherwise suggest, hint, or identify appellant as a party being released or discharged. When considered in light of the circumstances surrounding its execution, it is clear that the parties to the release [Nationwide and the appellee] did not intend to release the appellant. Appellant was not a party to the release, paid no consideration to be released, and was unaware of the existence of the release at the time it was originally executed. To interpret the release as absolving the appellant from liability on its contractual obligation to the appellee would be giving the appellant a gratuitous windfall not remotely contemplated by the parties to the release.

### *The Widow's Release to the Appellant*

The appellant's final contention is that the release executed by the decedent's widow on August 21, 1984, is binding upon the appellee thereby foreclosing the claim at issue here. Notwithstanding the fact that the release signed by the widow was pursuant to a claim for wrongful death and the instant claim was made pursuant to a survival action, appellant argues that form should not prevail over substance in determining whether the decedent's widow, in addition to releasing any claims she personally and directly might have, could also release the claims of the appellee on behalf of the estate.

Appellant refers us to no Maryland case on point but to several out-of-state cases which, on careful analysis, turn out to be inapposite. The principal cases relied upon involved a wrongful death statute delegating the right to bring such an action exclusively to the decedent's personal representative. In *Kennedy v. Davis*, 171 Ala. 609, 55 So. 104 (1911), the court held that a sole heir, before administra-

tion and before suit was brought, could settle and release a claim of damages for the wrongful death of the intestate, so as to bar an action under the wrongful death statute by the administrator who alone was authorized to bring the action.

The appellant cites *Kennedy v. Davis* for the proposition that a beneficiary (the widow) under what was, in effect, a wrongful death statute can, by executing a release, bind the personal representative. The appellant compares apples and oranges, by lifting the phrase "personal representative" out of its very limited context there and misapplying it in a very different context here. In the Alabama case, the intertwining powers of the two parties (beneficiary and personal representative) were analyzed within the single context of a wrongful death action. The law required that a personal representative be appointed to prosecute the claim for the exclusive benefit of the widow/beneficiary. The personal representative's role was purely formal. He was not acting on behalf of the decedent's estate, creditors of the estate, or legatees. It was only in that context that the Alabama Supreme Court stated, "We can see no reason why the sole beneficiary of the suit, damages, and judgment cannot compromise and settle with the alleged wrongdoer, out of court, and why it will not be binding upon the administrator." 171 Ala. at 613, 55 So. 104. The case has no remote application to a situation such as the one before us where the personal representative is pressing a different claim for the benefit of what may well be a different set of beneficiaries.

The same lack of a valid analogy undermines the other cases cited by the appellant. *McKeigue v. C & N.W. Ry. Co.*, 130 Wis. 543, 110 N.W. 384 (1907); *Schmidt v. Deegan*, 69 Wis. 300, 34 N.W. 83 (1887); *Christie v. Chicago R.I. & P.R. Co.*, 104 Iowa 707, 74 N.W. 697, 698 (1898); *Mann v. Minnesota Electric Light & Power Co.*, 43 F.2d 36 (10th Cir.1930). They all involve nothing more than the relationship, within the unitary confines of a wrongful death action,

between the ultimate beneficiary and the personal representative who is performing nothing more than the formal task of acting on behalf of the ultimate beneficiary. The personal representative in each of those cases was a mere nominal party. It would obviously have been improper to allow a second wrongful death action by the personal representative when the very beneficiaries for whom suit would be brought had already settled and released their claim for the wrongful death in issue. The cases all stand for the unremarkable proposition that a principal (*e.g.*, the widow) may bind her own mere agent. The appellee here, of course, was not the agent of Mrs. Chung.

By contrast, a decision that is very apposite and very persuasive is that of the Supreme Court of Pennsylvania in the case of *Pantazis v. Fidelity & Deposit Co. of Maryland*, 369 Pa. 221, 85 A.2d 421 (1952). There, as here, two separate actions were involved, a wrongful death action and a survival action. There, unlike here, the widow prosecuted both claims, as the survivor in the wrongful death action and as the administratrix of her husband's estate in the survival action. There, as here, the widow executed a release in the wrongful death claim. There, unlike here, the widow was the sole heir of her deceased and intestate husband. There, unlike here, the widow in her capacity as administratrix represented that there were no debts in the estate. The trial court ruled that the release she executed in the wrongful death action also released any interest she may have had in the survival action. In reversing, the Supreme Court observed that this "contention is spurious." 85 A.2d at 423. It held, 85 A.2d at 424:

"All that plaintiff released was her claim as an *individual* in the death action. As administratrix of her husband's estate, she lacked authority, as fiduciary, to release her deceased husband's estate. To do so required leave of the orphans' court, upon proper cause shown. Furthermore, she could not effectively stipulate, as fiduci-

ary *in her husband's estate,* that there were no debts or taxes due. Only an audit and adjudication could determine that. Nor can plaintiff's release in the *death action* of her *individual* rights be regarded in the *survival action* as a release and assignment of her distributive share under the intestate laws in her deceased husband's estate. What the plaintiff receives in distribution in settlement of her husband's estate is what the *law* directs shall be paid to her *as her distributive share."* (Emphasis in original).

In the present case, the widow did not even possess colorable authority to act on behalf of the estate in the survival action.

■ The release signed by the widow on the wrongful death claim had no foreclosing effect upon the independent claim of the appellee/personal representative. Once again, Judge McSherry has supplied the articulate rationale:

"[N]either of those actions is the alternative of, or substitute for, the other, and consequently that both may be maintained. This conclusion, as we have already intimated, dispenses with a review of the cases in other jurisdictions which hold that though two rights of action exist, yet a satisfaction of one is a bar to the other—and it dispenses with a review of them because it is obvious if the two actions accomplish different results and stand on different bases, secure different damages and are for the benefit of wholly different persons, they can not be alternative or substitutionary, and hence *the satisfaction of the one can in no way affect the other."* (Emphasis supplied).

*Stewart v. United Electric Light and Power Co., supra,* at 104 Md. 343–344, 65 A. 49. We hold that the trial court did not err in granting summary judgment in favor of the appellee.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.